UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
THE BANK OF NEW YORK TRUST COMPANY,
N.A., AS TRUSTEE,

                Interpleader Plaintiff,

      -against-

FRANKLIN ADVISERS, INC., FRANKLIN CLO II, LTD., FRANKLIN CLO II, CORP., CDO PLUS MASTER FUND, LTD., CHASE MANHATTAN BANK LONDON NOMINEE FOR SEIRA 13 as a nominee, DEUTSCHE BANK SECURITIES INC. as a nominee, GENSEC IRELAND LIMITED as a nominee, HARE & CO. as a nominee, MAC & CO. as a nominee, MASSACHUSETTS MUTUAL LIFE INSURANCE CO. as a nominee, MERRILL LYNCH, PIERCE, FENNER & SMITH INC. as a nominee, SUN LIFE ASSURANCE CO. OF CANADA as a nominee, TEMPLETON GLOBAL ADVISORS, LTD. as a nominee, AND

"JOHN DOE #1" through "JOHN DOE #12," the last twelve names being fictitious and unknown to plaintiff, the persons or parties intended being the beneficial owners of the Preferred Shares, the Series I Combination Security, and the Class C-2 Notes under the Indenture as more fully described in the Complaint,

                Interpleader Defendants.

------------------------------------------------------------------ X

Case No. 07-CV-1746 (VM)

**ANSWER AND CROSS-CLAIMS OF FRANKLIN ADVISERS, INC.**

      Defendant-in-interpleader Franklin Advisers, Inc. ("Franklin Advisers"), by its attorneys Schindler Cohen & Hochman LLP, answers the complaint-in-interpleader of plaintiff-in-interpleader The Bank of New York Trust Company, N.A. ("Bank of New York"), and asserts cross-claims against all defendants-in-interpleader, as follows:

### As To Nature Of Action

      1.     Franklin Advisers admits the allegations of Paragraph 1.

{00030261}

2. Franklin Advisers admits the allegations of Paragraph 2.

3. Franklin Advisers admits the allegations of Paragraph 3, and respectfully refers the Court to the document referred to therein for the contents thereof.

4. The first sentence of Paragraph 4 states a legal conclusion to which no answer is necessary. Franklin Advisers denies the allegations of Paragraph 4, except admits that CDO Plus Master Fund, Ltd. ("CDO Plus"), purporting to act on behalf of a majority of preferred shareholders, has informed the Trustee[1] that it disputes Franklin Advisers' entitlement to receive the Contingent Collateral Management Fee due to it under the Indenture.

5. Paragraph 5 states a legal conclusion to which no responsive pleading is required.

## As To The Parties

6. Franklin Advisers admits, on information and belief, the allegations contained in Paragraph 6.

7. Franklin Advisers admits the allegations of Paragraph 7.

8. Franklin Advisers admits the allegations of Paragraph 8.

9. Franklin Advisers admits the allegations of Paragraph 9.

10. Franklin Advisers admits, on information and belief, the allegations contained in Paragraph 10.

11. Franklin Advisers admits, on information and belief, the allegations contained in Paragraph 11.

12. Franklin Advisers admits, on information and belief, the allegations contained in Paragraph 12.

---

[1] Capitalized terms not defined herein are defined as set forth in the Indenture referred to in the Interpleader Complaint.

13. Franklin Advisers admits, on information and belief, the allegations contained in Paragraph 13.

14. Franklin Advisers admits, on information and belief, the allegations contained in Paragraph 14.

15. Franklin Advisers admits, on information and belief, the allegations contained in Paragraph 15.

16. Franklin Advisers admits, on information and belief, the allegations contained in Paragraph 16.

17. Franklin Advisers denies the allegations contained in Paragraph 17, except admits that Templeton Global Advisors, Ltd. is a Holder of Preferred Shares of the Issuer and has an address of P.O. Box N-7758, Lyford Cay, Nassau, Bahamas.

18. Franklin Advisers admits, on information and belief, the allegations contained in Paragraph 18.

19. Franklin Advisers admits, on information and belief, the allegations contained in Paragraph 19.

20. Franklin Advisers is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 20.

21. Franklin Advisers admits, on information and belief, the allegations of Paragraph 21 that some or all of the other defendants-in-interpleader may have an interest in a portion of the funds deposited with the registry of the Court, and Franklin Advisers states that it is entitled to (i) payment of the Contingent Collateral Management Fee due to it pursuant to the terms of the Indenture in an amount of not less than $7,220,205.60 from the funds deposited with the registry of the Court, and (ii) payment of its costs and expenses (including legal fees) incurred in

connection with defending this interpleader action from the funds deposited with registry of the Court.

### As To Subject Matter Jurisdiction And Venue

22. Paragraph 22 states legal conclusions to which no answer is necessary. To the extent an answer is necessary, Franklin Advisers admits the allegations contained in Paragraph 22.

23. Paragraph 23 states a legal conclusion to which no answer is necessary. To the extent an answer is necessary, Franklin Advisers admits the allegations contained in Paragraph 23.

### As To The Facts

24. Franklin Advisers admits, on information and belief, the allegations contained in Paragraph 24.

25. Franklin Advisers admits the allegations contained in Paragraph 25.

26. Franklin Advisers admits the allegations contained in Paragraph 26, and respectfully refers the Court to the document referred to therein for the contents thereof.

27. Franklin Advisers is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 27, and respectfully refers the Court to the document referred to therein for the contents thereof.

28. Franklin Advisers is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 28, and respectfully refers the Court to the document referred to therein for the contents thereof.

29. Franklin Advisers is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 29, and respectfully refers the Court to the document referred to therein for the contents thereof.

30. As to Paragraph 30, Franklin Advisers admits that James C. McCarroll, Esq. of Reed Smith LLP ("McCarroll"), counsel for CDO Plus, sent a letter to Franklin Advisers, dated February 6, 2007, and respectfully refers the Court to such letter for the contents thereof.

31. As to Paragraph 31, Franklin Advisers admits that McCarroll sent a letter to Franklin Advisers, dated February 9, 2007, and respectfully refers the Court to such letter for the contents thereof.

32. Franklin Advisers admits the allegations contained in Paragraph 32, and respectfully refers the Court to the document referred to therein for the contents thereof.

33. Franklin Advisers admits the allegations contained in Paragraph 33, and respectfully refers the Court to the document referred to therein for the contents thereof.

34. As to Paragraph 34, Franklin Advisers admits that it has certified, based on its calculations, that it was owed $7,220,205.60 as its Contingent Collateral Management Fee as of February 28, 2007 based on the Interest Proceeds and Principal Proceeds held by the Trustee as of such date, and respectfully refers the Court to the document referred to therein for the contents thereof.

35. Franklin Advisers admits the allegations contained in the first sentence of Paragraph 35, and states, on information and belief, that the Trustee made certain payments of proceeds on or about February 28, 2007.

36. Franklin Advisers denies the allegations contained in Paragraph 36.

37. Franklin Advisers is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 37, but states that on or about February 28 the Trustee deposited approximately $28.2 million into the registry of the Court, and admits the allegations of the last sentence of Paragraph 37.

**As To The Claim For Relief**
**(Statutory Interpleader Pursuant to 28 U.S.C. § 1335(a))**

38.     Franklin Advisers repeats and realleges its responses to Paragraphs 1 through 37 as if fully set forth herein.

39.     Franklin Advisers denies the allegations contained in Paragraph 39 except it admits that Franklin Advisers is entitled, from the funds deposited with registry of the Court, (i) to payment of its Contingent Collateral Management Fee pursuant to the plain terms of the Indenture and the Collateral Management Agreement in an amount not less than $7,220,205.60, and (ii) to payment of its costs and expenses (including legal fees) incurred in connection with defending this Interpleader action.

40.     Paragraph 40 states a legal position to which no responsive pleading is required.

41.     Paragraph 41 states a legal conclusion to which no responsive pleading is required.

**CROSS-CLAIMS AGAINST ALL DEFENDANTS-IN-INTERPLEADER**

42.     Defendant-in-interpleader Franklin Advisers acted as the Collateral Manager in connection with a certain collateralized debt offering (the "CLO II Transaction") pursuant to (i) the Indenture among Franklin CLO II, Ltd. (the "Issuer"), Franklin CLO II, Corp., and The Chase Manhattan Bank, dated July 26, 2001, (the "Indenture")[2] and (ii) the Collateral Management Agreement between the Issuer, and Franklin Advisers, Inc., dated July 26, 2001 (the "CMA")[3].

43.     Upon redemption of the CLO II Notes, Franklin Advisers' management led to a highly successful auction of the collateral, which in turn, yielded substantial returns – approximately a 17% internal rate of return (based on a purchase at par at the Closing), even after

---

[2]     Exhibit A to the Interpleader Complaint.

[3]     Exhibit B to the Interpleader Complaint.

payment of the incentive management fee (the "CCMF," which is defined below) – for the Holders of the Preferred Shares (the "Preferred Shareholders"), including CDO Plus.

44. Nonetheless, CDO Plus, purportedly on behalf of itself and certain other Preferred Shareholders, has elected to challenge the payment of this incentive management fee that is owed to Franklin Advisers pursuant to the Indenture and the CMA.

## Parties

45. Defendant-in-interpleader and cross-claimant Franklin Advisers is a California corporation with its principal place of business at One Franklin Parkway, Building 920, 1st Floor, San Mateo, California 94403 and is the Collateral Manager for the CLO II Transaction.

46. Defendant-in-interpleader and cross-claim defendant Franklin CLO II, Ltd. is an exempted limited liability company incorporated under the laws of the Cayman Islands with an address at c/o Deutsche Bank (Cayman), P.O. Box 1984 GT, Elizabethan Square, Grand Cayman, Cayman Islands, BWI and is the Issuer under the Indenture.

47. Defendant-in-interpleader and cross-claim defendant Franklin CLO II, Corp. is a corporation organized under the laws of the State of Delaware with an address at c/o Puglisi & Associates, 850 Library Avenue, Suite 204, Newark, Delaware 19711 and is the Co-Issuer under the Indenture.

48. On information and belief, defendant-in-interpleader and cross-claim defendant CDO Plus is an Isle of Jersey exempted corporation formed on June 13, 2006 with an address of Le Masurier House, St. Helier JE2 4YE Jersey, Channel Islands, and is a Preferred Shareholder of the Issuer.

49. On information and belief, defendant-in-interpleader and cross-claim defendant Chase Manhattan Bank London Nominee for Seira 13 is a nominee for certain Preferred

Shareholders of the Issuer and has an address of P.O. Box 1984GT, Elizabethan Square, Grand Cayman, Cayman Islands BWI.

50. On information and belief, defendant-in-interpleader and cross-claim defendant Deutsche Bank Securities Inc. is a nominee for certain Preferred Shareholders of the Issuer and is located at 1251 Avenue of the Americas, 25th Floor, New York, NY 10020.

51. On information and belief, defendant-in-interpleader and cross-claim defendant Gensec Ireland Limited is a nominee for certain Preferred Shareholders of the Issuer and is located at 2A Parkview House, Beech Hill Road, Dublin, Ireland, IR 4.

52. On information and belief, defendant-in-interpleader and cross-defendant Hare & Co., is a nominee for certain Preferred Shareholders of the Issuer and has an address of C/O The Bank of New York, P.O. Box 11203, New York, NY 10286 and C/O The Bank of New York, Income Collection Department, P.O. Box 11203, New York, NY 10249.

53. On information and belief, defendant-in-interpleader and cross-claim defendant Mac & Co. is a nominee for certain Preferred Shareholders of the Issuer and has an address of Attn: MBS Income Unit, P.O. Box 3195, Pittsburgh, PA 15230-3195.

54. On information and belief, defendant-in-interpleader and cross-claim defendant Merrill Lynch, Pierce, Fenner & Smith Inc. is a nominee for certain Preferred Shareholders of the Issuer and has an address of Dividend & Interest Department, 101 Hudson Street, 9th Floor, Jersey City, NJ 07302.

55. Defendant-in-interpleader and cross-claim defendant Templeton Global Advisors, Ltd. is a Preferred Shareholder of the Issuer and has an address of P.O. Box N-7758, Lyford Cay, Nassau, Bahamas.

56. On information and belief, defendant-in-interpleader and cross-claim defendant Massachusetts Mutual Life Insurance Co. is the nominee for the holders of the Series I Combination Security shares of the Issuer and has an address of C/O David L. Babson & Company Inc., 1295 State Street, Springfield, MA 01111.

57. Defendants-in-interpleader and cross-claim defendants "JOHN DOE #1" through "JOHN DOE #12," the last twelve names being fictitious and unknown to the Trustee and Franklin Advisers, are intended to be the persons or parties being the beneficial owners of the Preferred Shares, the Series I Combination Security, and the Class C-2 Notes under the Indenture.

58. The cross-claim defendants have, or may have, an interest in some portion of the funds deposited with the registry of the Court.

### Subject Matter Jurisdiction And Venue

59. The Court has jurisdiction over this statutory interpleader cross-claim pursuant to the provisions of 28 U.S.C. § 1335(a) because: (i) there is a diversity of citizenship between several of the defendants-in-interpleader, including Franklin Advisers and CDO Plus; (ii) the value of the funds at issue exceeds $500.00; and (iii) the Trustee has deposited the amount in dispute into the registry of the Court.

60. This Court is the proper venue for this action under 28 U.S.C. § 1397 because at least one defendant-in-interpleader and cross-claim defendant, Deutsche Bank Securities, Inc., is a resident within this judicial district.

### COUNT I
### (Seeking declaratory relief, pursuant to 28 U.S.C. §§ 2201 and 2202)

61. Franklin Advisors repeats and realleges each and every allegation contained in paragraphs 42 through 61 above, as if set forth fully herein.

**The Contingent Collateral Management Fee**

62. Pursuant to the terms of the Indenture and the CMA, Franklin Advisers was entitled to various fees for performing certain duties on behalf of the Issuer of the collateralized debt, including, *inter alia*: (i) supervising and directing the investment and reinvestment of the Collateral and (ii) monitoring the Collateral on an ongoing basis. (*See* CMA at 1-4.)

63. Such fees include: (a) the Base Collateral Management Fee, (b) the Subordinated Collateral Management Fee, and (c) the Contingent Collateral Management Fee (the "CCMF"), which is essentially an incentive fee to reward good financial performance with respect to Franklin Advisers' management of the Collateral.

64. Pursuant to the Indenture, all Interest Proceeds and Principal Proceeds flowing from the Collateral are to be distributed according to two sets of detailed Priorities of Payments (also known as "waterfalls"). (*See generally* Indenture § 11.1(a) (listing the Priority of Payments for Interest Proceeds and Principal Proceeds).) For example, Interest Proceeds are applied first to taxes owed by the Issuer, second, to various Administrative Expenses, third to the Class A-1 Noteholders, and so on, through seventeen different steps, each of which includes different classes of payments and/or types of Noteholders. (*Id.* §§ 11.1(a)(i)(A)-(B).)

65. According to the plain terms of the Indenture and the CMA, the CCMF is payable from both the Interest Proceeds and Principal Proceeds received by the Issuer. (*See* Indenture §§ 11.1(a)(i)(O) and 11.1(a)(ii)(J).) Payment of the CCMF is prioritized fifteenth with respect to application of Interest Proceeds and tenth with respect to the application of Principal Proceeds. (*Id.* § 11.1(a)(i)(O) and § 11.1(a)(ii)(J).)

66. The owners of Preferred Shares are last in priority in both the interest and principal waterfalls. (*See* Indenture §§ 11.1(a)(i)(Q), 11.1(a)(ii)(L).) In other words, the owners of

Preferred Shares do not receive their shares of the Interest Proceeds or Principal Proceeds until, among other things, all taxes, Administrative Expenses, payments to Noteholders, and payment of fees (both guaranteed and contingent) to Franklin Advisers have been distributed.

67. The Indenture provides that all payments, including those in connection with an Optional Redemption, flowing from the Collateral are to be made on Distribution Dates, which are defined as November 28, February 28, May 28, and August 28 of each year. (*See* Indenture §§ 1.1 (definition of "Distribution Date"), 11.1(a)(i), 11.1(a)(ii).)

68. Instead of allowing the Notes to reach maturity, the Indenture permits a majority of Preferred Shareholders, at their discretion, to trigger an "Optional Redemption," directing the Issuers to redeem the Notes on any Distribution Date after February 28, 2005. Such an Optional Redemption requires the sale of all the Collateral securing the Notes. The Distribution Date on which the Optional Redemption occurs is defined as the "Redemption Date." (*See* Indenture §§ 1.1 (definition of "Redemption Date"); 9.1(a) (". . . the Notes shall be redeemable . . . on any Distribution Date occurring on or after the Optional Redemption Date. . . .").)

69. The definition of the CCMF in the Indenture sets forth the mechanism for calculating the CCMF. In addition to the Priority of Payments, the payment of the CCMF is subject to three conditions:

(a) the CCMF will only become payable to Franklin Advisers if the Preferred Shareholders receive an internal rate of return ("IRR") of 12% per annum through, and including, a given Distribution Date;

(b) there must be sufficient funds for such payment after Noteholders higher in the Priority of Payments have received their requisite payouts; and

- 11 -

(c) the ultimate CCMF payable to Franklin Advisers must be the lesser of (i) the initial CCMF formula as set forth in the definition[4] and (ii) 40% of the Interest or Principal Proceeds available to be distributed to the Preferred Shareholders in excess of the amount necessary to obtain a 12% IRR for the Preferred Shareholders (the Preferred Shareholders would receive the other 60% of amounts over the amount required to give them a 12% IRR).[5]

70.     As set forth below, when an Optional Redemption was triggered, all of these conditions were met and Franklin Advisers became entitled to receive its CCMF, equaling as of the February 28, 2007 Distribution Date based on Interest Proceeds and Principal Proceeds then held by the Trustee, 40% of the available amount above the amount required to provide the Preferred Shareholders a 12% return, *i.e.*, $7,220,205.

### The CCMF Totaling Not Less Than $7,220,205 Is Owed To Franklin Advisers

71.     In January 2007, the Issuer and Co-Issuer purportedly received directions from holders of the majority of Preferred Shares directing them to trigger an Optional Redemption pursuant to Section 9.1(a) of the Indenture. Following the receipt of the Issuer Certificate-Notice of Redemption, the Trustee redeemed the Notes (other than certain amounts with respect to the Class C-2 Notes) on or about February 28, 2007.

72.     Franklin Advisers also received the Issuer Certificate-Notice of Redemption on January 25, 2007. Consistent with its managerial duties, and in an effort to achieve the highest

---

[4]     This initial CCMF formula is an amount approximately equal to 0.25% per annum of the sum (on the first day of the time period prior to a given Distribution Date) of (i) the outstanding principal amount of the corporate loans and short term investments included in the Collateral plus (ii) all cash representing Principal Proceeds held by the Trustee for the benefit of the Noteholders.

[5]     Pursuant to the CCMF definition in the Indenture, this 12% IRR hurdle is calculated based on an investor having purchased at par on the Closing date. (*See* Indenture § 1.1 (Definition of CCMF).)

possible price, Franklin Advisers marketed the entire collateral loan pool to various leading bank loan dealers as potential buyers.

73. Pursuant to the Indenture, Franklin Advisers liquidated the Collateral by auction on February 7, 2007.

74. Merrill Lynch submitted the winning bid, which industry analysts deemed "surprisingly high."

75. Following the auction of the collateral, including the sale of 213 loans, at a face amount of $473,710,519, and the distribution of nearly $515 million in interest and principal in accordance with the waterfall priorities of §11.1(a) of the Indenture, the Trustee possessed a remainder of approximately $28,249,181.73 in principal to be applied to payment of the CCMF and the classes below the CCMF in the Principal Proceeds (§ 11.1(a)(ii)) waterfall. These include the holders of Class C-2 Notes, the holders of Series 1 Combination Securities (with respect to the portion of these securities comprised of Series I Preferred Share Components) and the Preferred Shareholders. (*See* Indenture § 11.1(a)(ii)(K)-(L).)

76. However, the final sum payable to these latter three classes can only be determined and, therefore, distributed, after determination and payment of the CCMF pursuant to the § 11.1(a)(ii) waterfall.

77. Due to the extraordinary liquidation price for the Collateral achieved by Franklin Advisers, the Preferred Shareholders would have received an internal rate of return of over 17% (based on a purchase at par upon Closing) if the payments of principal were distributed on the original Redemption Date – even after the approximately $7.2 million CCMF was paid to Franklin Advisers.

78. Applying the formula set forth in the definition of the CCMF in the Indenture, Franklin Advisers certified that it was entitled to a CCMF of $7,220,205.60 as of February 28, 2007, as follows: The equity shareholders need only receive $10,198,667.74 of the total $28,249,181.73 in Principal Proceeds available for distribution to such parties to achieve the requisite 12% IRR and thus trigger payment of the CCMF. Of the remaining $18,050,513.99 available for distribution, Franklin Advisers is entitled to the lesser of (i) 40% of such sum (which equals $7,220,205.60) or (ii) the accrued CCMF as calculated using the initial formula in the CCMF definition (which equals $7,466,654.47). (*See* Indenture § 1.1 (Definition of CCMF).)[6] Accordingly, under the terms of the Indenture, Franklin Advisers is entitled to not less than $7,220,205.60 as its CCMF.

### CDO Plus Claims Franklin Advisers Is Not Entitled To Its Contingent Fee

79. Despite Franklin Advisers' successful management and liquidation of the Collateral, Defendant-in-Interpleader CDO Plus wrongfully seeks to inflate its already-impressive returns by depriving Franklin Advisers of its CCMF.

80. In letters dated February 6 and February 9, 2007, CDO Plus, through its counsel, set forth its purported rationale for denying payment of the CCMF to Franklin Advisers.

81. Primarily, CDO Plus claims that because the CCMF payment is higher in the waterfall priority than the payment of Principal Proceeds to the Preferred Shareholders, and because the 12% IRR hurdle is not reached until payment of such Principal Proceeds to the Preferred Shareholders, the CCMF may not be paid. In other words, CDO Plus believes that the

---

[6] Franklin Advisers believes that additional proceeds from the liquidation and sale of the CLO II Collateral are yet to be received by the Trustee and, presumably, will be deposited with the Court. Due to the anticipated receipt of such additional funds and the present inability to liquidate the amount of Franklin Advisers' ongoing litigation costs, which are subject to indemnification from the interpled funds at a point in the waterfalls above the calculation of the CCMF, the exact amount of the CCMF actually due to Franklin Advisers pursuant to the Indenture cannot be precisely calculated. However, Franklin Advisers believes that such amount will not be less than the $7,220,205.60 which was due to it as of February 28, 2007.

payments of principal it receives on the Redemption Date should not be taken into consideration when determining whether the 12% IRR hurdle has been reached.

### CDO Plus's Position Is At War With The Terms Of The Indenture, Industry Custom, And The Opinion Of Deal Counsel

82.     CDO Plus's claims are contradicted by the plain language of the Indenture, which makes clear that calculation of the CCMF and whether the 12% IRR hurdle has been met ***requires a simultaneous calculation of the amount that will be payable on the final Distribution Date (i.e. the Redemption Date) to the Preferred Shareholders***. (*See* Indenture § 1.1 (Definition of CCMF).)

83.     Moreover, CDO Plus's analysis defies industry custom and practice. Collaterized debt transactions, such as CLO II, generally consider payments of principal due to be made on redemption or distribution dates when calculating IRR.

84.     In addition, CDO Plus's analysis ignores market reality because it would render it virtually impossible for Franklin to *ever* earn a CCMF. Under CDO Plus's (mis)reading of the Indenture, CLO II would have had to earn returns that are entirely beyond the scope of normal, even very optimistic, market assumptions, before Franklin Advisers would be entitled to a CCMF – an arrangement to which no rational collateral manager would agree.

85.     Finally, the law firm who was primarily responsible for drafting the Indenture, Cleary Gottlieb Steen & Hamilton LLP ("Cleary Gottlieb"), opined in a memorandum written to the Trustee that Franklin Advisers is entitled to the CCMF and that CDO Plus's arguments to the contrary are based on an erroneous interpretation of the Indenture. This memorandum from Cleary Gottlieb is attached hereto as Exhibit A.

86. Accordingly, Franklin Advisers is entitled to a declaration that it is entitled to receive from the interpled funds a CCMF in an amount to be determined at trial, but not less than $7,220,205.60.

87. As a result of the dispute concerning payment of the CCMF, there is an actual, justiciable controversy among Franklin Advisers, CDO Plus and the other Preferred Shareholders.

## COUNT II
### (Seeking declaratory relief, pursuant to 28 U.S.C. §§ 2201 and 2202)

88. Franklin Advisors repeats and realleges each and every allegation contained in paragraphs 42 through 88 above, as if set forth fully herein.

**Franklin Advisers Is Entitled To Indemnification For Expenses Incurred In This Action**

89. The CMA provides that:

> "[t]he Issuer shall indemnify and hold harmless . . . the Collateral Manager and its Affiliates . . . from and against any and all Liabilities, and will reimburse [the Collateral Manager] for all reasonable fees and expenses (including reasonable fees and expenses of counsel) . . . as such Expenses are incurred in investigating preparing, pursuing, or defending any claim, action, proceeding or investigation with respect to any pending or threatened litigation . . . caused by, or arising out of or in connection with the issuance of the Offered Securities, the transactions contemplated by the Offering Memorandum, the Indenture or this Agreement . . . ." (*See* CMA § 10(b).)

90. Any indemnification payments must be paid from the Collateral in accordance with the Indenture's Priority of Payments. (*See* CMA § 10(b).) Indemnification payments are included in the second step of waterfall distributions of Interest Proceeds and the first step with respect to Principal Proceeds. (*See* Indenture § 11.1(i)(B)(ii) (proceeds applied to "accrued and unpaid Administrative Expenses constituting expenses of the Co-Issuers (other than the Collateral Management Fee *but including other amounts payable by the Issuer to the Collateral Manager under the Collateral Management Agreement* . . .)") (emphasis added), 11.1(ii)(A).)

91. Accordingly, Franklin Advisers is entitled to a declaration that it be reimbursed for its costs and expenses (including payment of legal fees) arising out of this action, from the interpled funds, prior to the distribution of any other portions of the interpled funds to any of the cross-claim defendants.

92. Based on the foregoing, and because amounts owed to Franklin Advisers have been deposited with the Court, there is an actual, justiciable controversy.

**WHEREFORE,** defendant-in-interpleader and cross-claimant Franklin Advisers demands judgment:

a. Declaring that Franklin Advisers is entitled to a Contingent Collateral Management Fee in an amount to be determined at trial, but not less than $7,220,205.60;

b. Declaring that Franklin Advisers is entitled to reimbursement of its costs and expenses (including legal fees) arising out of this action in an amount to be determined at trial;

c. Directing the Clerk to pay to Franklin Advisers its Contingent Collateral Management Fee in an amount to be determined at trial, but not less than $7,220,205.60, plus any appropriate amounts of interest, from the interpled funds;

d. Directing the Clerk to pay to Franklin Advisers its fees and expenses (including legal fees) in an amount to be determined at trial, plus any appropriate amounts of interest, from the interpled funds;

e. Directing the Clerk to pay to the Preferred Shareholders and Class C-2 Noteholders their *pro rata* portions of the interpled funds in accordance with the terms of the Indenture in amounts to be determined at trial, remaining after payment of the amounts due to Franklin Advisers (as requested herein); and

    f.    For such other and further relief as the Court deems just and proper.

Dated: New York, New York
       April 20, 2007

                          SCHINDLER COHEN & HOCHMAN LLP

                          By:   <u>s/ Jonathan L. Hochman</u>
                                 Jonathan L. Hochman (JH 7072)
                                 Matthew A. Katz (MK 4252)

                          100 Wall Street, 15th Floor
                        New York, New York 10005
                        Telephone: (212) 277-6300
                        Facsimile:  (212) 277-6333

                        *Attorneys for Franklin Advisers, Inc.*