UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------x
THE BANK OF NEW YORK TRUST  :
COMPANY N.A., AS TRUSTEE    :     Case No. 07 CIV 1746 (VM)
                            :
    Interpleader Plaintiff, :     **ANSWER AND CROSSCLAIMS**
                            :
    -against-               :     *Filed Electronically*
                            :
FRANKLIN ADVISERS, INC.,    :
FRANKLIN CLO II, LTD.,      :
FRANKLIN CLO II, CORP., CDO :
PLUS MASTER FUND, LTD., CHASE :
MANHATTAN BANK LONDON       :
NOMINEE FOR SEIRA 13, as a nominee, :
DEUTSCHE BANK SECURITIES INC. as :
a nominee, GENSEC IRELAND LIMITED :
as a nominee, HARE & CO. as a nominee, :
MAC & CO. as a nominee,     :
MASSACHUSETTS MUTUAL LIFE   :
INSURANCE CO. as a nominee, :
MERRILL LYNCH, PIERCE, FENNER :
& SMITH INC. as a nominee, SUN LIFE :
ASSURANCE CO. OF CANADA as a :
nominee, TEMPLETON GLOBAL   :
ADVISORS, LTD. as a nominee, AND :
                            :
"JOHN DOE #1" through "JOHN DOE :
#12," the last twelve names being :
fictitious and unknown to plaintiff, the :
the persons or parties intended being the :
beneficial owners of the Preferred Shares, :
the Series I Combination Security, and the :
Class C-2 Notes under the Indenture as :
more fully described in the Complaint, :
                            :
    Interpleader Defendants. :
---------------------------------------------x

Interpleader Defendants CDO Plus Master Fund, Ltd. ("CDO Plus") and Merrill Lynch, Pierce, Fenner & Smith, Incorporated ("Merrill Lynch," and together with CDO Plus, the "Crossclaiming Defendants"), by and through their attorneys, Reed Smith LLP, file their Answer and Crossclaims to the Interpleader Complaint filed by The Bank of New York Trust Company, N.A., as Trustee (the "Trustee"), and allege as follows:

## I. ANSWER

### NATURE OF ACTION

1. Admitted.

2. Admitted. By way of further response, the Indenture speaks for itself.

3. Admitted. By way of further response, all documents referenced in Paragraph 3 speak for themselves.

4. Crossclaiming Defendants admit that they are preferred shareholders; that together they are, or are authorized to act on behalf of, the holders of a majority of preferred shares under the Indenture[1]; and that a dispute exists regarding the Collateral Manager's entitlement to payment of any Contingent Collateral Management Fee on the Redemption Date. Crossclaiming Defendants have insufficient knowledge to admit or deny the remaining allegations contained in Paragraph 4. By way of further response, all documents referenced in Paragraph 4 speak for themselves.

5. Crossclaiming Defendants admit that the Trustee is exposed to multiple liability as a result of the dispute described in Paragraph 4. Crossclaiming Defendants have insufficient knowledge to admit or deny the remaining allegations contained in Paragraph 5.

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Indenture.

## PARTIES

6. Admitted.

7. Crossclaiming Defendants have insufficient knowledge to admit or deny the allegations contained in Paragraph 7.

8. Crossclaiming Defendants have insufficient knowledge to admit or deny the allegations contained in Paragraph 8.

9. Crossclaiming Defendants have insufficient knowledge to admit or deny the allegations contained in Paragraph 9.

10. Admitted.

11. Crossclaiming Defendants have insufficient knowledge to admit or deny the allegations contained in Paragraph 11.

12. Crossclaiming Defendants have insufficient knowledge to admit or deny the allegations contained in Paragraph 12.

13. Crossclaiming Defendants have insufficient knowledge to admit or deny the allegations contained in Paragraph 13.

14. Crossclaiming Defendants have insufficient knowledge to admit or deny the allegations contained in Paragraph 14.

15. Crossclaiming Defendants have insufficient knowledge to admit or deny the allegations contained in Paragraph 15.

16. Crossclaiming Defendants have insufficient knowledge to admit or deny the allegations contained in Paragraph 16.

17. Crossclaiming Defendants have insufficient knowledge to admit or deny the allegations contained in Paragraph 17.

18. Crossclaiming Defendants have insufficient knowledge to admit or deny the allegations contained in Paragraph 18.

19. Crossclaiming Defendants have insufficient knowledge to admit or deny the allegations contained in Paragraph 19.

20. Crossclaiming Defendants have insufficient knowledge to admit or deny the allegations contained in Paragraph 20.

21. Crossclaiming Defendants admit that, as preferred shareholders and holders of Class C-2 Notes, they have an interest in, and right to payment of, the funds deposited with the registry of the Court (the "Interpleaded Funds"). Crossclaiming Defendants deny that any Interpleader Defendant has an interest in the Interpleaded Funds, except by virtue of its ownership of Preferred Shares, Series I Combination Securities, or Class C-2 Notes, and then only pursuant to the terms of the Indenture.

## SUBJECT MATTER JURISDICTION AND VENUE

22. Admitted.

23. Admitted.

## FACTS

24. Admitted.

25. Admitted. By way of further response, the Indenture speaks for itself.

26. Crossclaiming Defendants admit that Franklin Advisers is the current appointed Collateral Manager pursuant to the Collateral Management Agreement dated as of July 26, 2001, and that a true and correct copy of the Collateral Management Agreement is attached to the

Interpleader Complaint as Exhibit B. By way of further response, the Collateral Management Agreement speaks for itself.

27. Admitted. By way of further response, all documents referenced in Paragraph 27 speak for themselves.

28. Admitted. By way of further response, all documents referenced in Paragraph 28 speak for themselves.

29. Crossclaiming Defendants admit that they received copies of the Trustee's Notice of Redemption, a true and accurate copy of which is attached to the Interpleader Complaint as Exhibit E. By way of further response, all documents referenced in Paragraph 29 speak for themselves.

30. Crossclaiming Defendants admit that a true and accurate copy of CDO Plus' February 6, 2007, letter is attached to the Interpleader Complaint as Exhibit F. By way of further response, all documents referenced in Paragraph 30 of the Interpleader Complaint speak for themselves.

31. Crossclaiming Defendants admit that a true and accurate copy of CDO Plus' February 9, 2007, letter is attached to the Interpleader Complaint as Exhibit G. By way of further response, all documents referenced in Paragraph 31 of the Interpleader Complaint speak for themselves.

32. Crossclaiming Defendants admit that a true and accurate copy of Franklin Advisers' February 14, 2007, letter is attached to the Interpleader Complaint as Exhibit H. Crossclaiming Defendants deny the remaining allegations contained in Paragraph 32. By way of further response, all documents referenced in Paragraph 32 speak for themselves.

33. Crossclaiming Defendants admit that a true and accurate copy of the Contingent Collateral Management Fee Certificate dated February 26, 2007, is attached to the Interpleader Complaint as Exhibit I. Crossclaiming Defendants have insufficient knowledge to admit or deny the remaining allegations contained in Paragraph 33. By way of further response, all documents referenced in Paragraph 33 speak for themselves.

34. Crossclaiming Defendants deny that Franklin Advisers is owed any payment on account of the Contingent Collateral Management Fee, let alone a windfall of $7,220,205.00, as claimed in its Certification attached as Exhibit "H" to the Interpleader Complaint. The remaining allegations contained Paragraph 34 also are denied. By way of further response, all documents referenced in Paragraph 34 of the Interpleader Complaint speak for themselves.

35. Crossclaiming Defendants admit that the Collateral Manager liquidated the Collateral pursuant to the Notice of Redemption. The remaining allegations in Paragraph 35 of the Interpleader Complaint are denied for lack of knowledge regarding the Trustee's intentions with respect to undisputed payments from the liquidated proceeds.

36. The allegations contained in Paragraph 36 of the Interpleader Complaint are denied for lack of knowledge as to communications between Franklin Advisers and the Trustee. By way of further response, the internal rate of return on the Preferred Shares does not reach 12% until after application of the Principal Proceeds on the Redemption Date. To the extent the allegations contained in Paragraph 36 suggest to the contrary, they are denied. To the extent the allegations contained in Paragraph 36 suggest that reaching the 12% internal rate of return on the Redemption Date triggers payment of the Contingent Collateral Management Fee, they also are denied.

37. The allegations contained in Paragraph 37 of the Interpleader Complaint are denied. Crossclaiming Defendants lack knowledge as to the Trustee's reasons for depositing funds, or its allocations of funds it deposited, in the Registry of the Court.

### CLAIM FOR RELIEF
### (Statutory Interpleader Pursuant to 28 U.S.C. § 1335(a))

38. Crossclaiming Defendants incorporate their foregoing responses in Paragraphs 1 - 37, as if set forth at length herein.

39. Crossclaiming Defendants deny that any Interpleader Defendant has an interest in the Interpleaded Funds, except by virtue of its ownership of Preferred Shares, Series I Combination Securities, or Class C-2 Notes, and then only pursuant to the terms of the Indenture.

40. Admitted.

41. Admitted.

## II. CROSSCLAIMS

42. Crossclaiming Defendants incorporate their foregoing responses in Paragraphs 1 - 41, as if set forth at length herein.

### SUBJECT-MATTER JURISDICTION

43. The Court has jurisdiction over these crossclaims pursuant to the provisions of 28 U.S.C. §§ 1335 & 2201, and under the principles of supplemental jurisdiction.

## FACTUAL BACKGROUND

The Essence of the Dispute

44. This action arises from a dispute over whether a contingent fee is payable to a collateral manager.

45. The fee at issue is contingent because it is not payable, in any amount, unless and until equity investors have received a 12% return on their investment.

46. The fee does not accrue, in any amount, unless it is payable as of a specified distribution date and there is insufficient cash available to pay it on that date.

47. Notwithstanding the undisputed fact that equity investors did not receive a 12% return on their investment until final liquidation of the managed collateral on February 28, 2007, the collateral manager inexplicably has demanded payment of a $7,220,205.60 contingent fee. This demand is not supported by any cognizable facts or law, and it should be summarily denied.

The Details of the Dispute

48. Franklin CLO II is a collateralized loan obligation pool, which sold investment instruments to qualified investors in the form of several varieties of debt instruments, along with one equity instrument – the Preferred Shares.

49. The rights and obligations of all parties with regard to the assets of Franklin CLO II, as well as all proceeds therefrom, are governed by the Indenture.

50. Franklin CLO II is managed by a "Collateral Manager," Franklin Advisers. In exchange for its collateral management services, pursuant to the terms of the Indenture, Franklin Advisers has been paid a variety of fees. It would be eligible, under certain circumstances, to

receive an additional, contingent fee, denominated a "Contingent Collateral Management Fee," based upon the returns on investment realized by holders of the Preferred Shares.

51.  Franklin Advisers asserts that it is entitled to a $7,220,205.60 Contingent Collateral Management Fee as additional compensation (beyond the fees it already has collected) for its management of the collateral of Franklin CLO II (the "Collateral"), from inception of Franklin CLO II through full liquidation and scheduled final distribution of proceeds therefrom on February 28, 2007 (the "Redemption Date"[2]). As described in detail below, the Crossclaiming Defendants, as substantial holders of Preferred Shares and Class C-2 Notes of Franklin CLO II, dispute this claim, relying upon the plain, unambiguous language of the Indenture.

52.  Pursuant to the Indenture, the Collateral Manager is entitled to be paid a Contingent Collateral Management Fee out of available funds if, and only if, the holders of Preferred Shares have received a 12% "internal rate of return" on the face amount of their investments. Specifically, the Indenture provides that a "Contingent Collateral Management Fee" is **"payable to the Collateral Manager in arrears on each Distribution Date, . . . only to the extent that (i) the holders of the Preferred Shares have received an internal rate of return of 12% per annum . . . and (ii) funds are available for such purpose in accordance with the Priority of Payments described under Section 11.1 hereof. . . ."** See Indenture, p. 16 (emphasis added); see also Exh. A (for the convenience of the Court, in Exhibit A the Crossclaiming Defendants have included the full Indenture definition of Contingent Collateral Management Fee, along with a chart demonstrating the non-accrual, and non-payability thereof).

---

2  The Redemption Date also is a "Distribution Date" as defined in the Indenture.

53. Upon information and belief, Franklin Advisers and the Crossclaiming Defendants are in agreement that (i) prior to the Redemption Date, the Preferred Shares had never received an internal rate of return of 12% or more, and (ii) the Preferred Shares will receive an internal rate of return of at least 12% only upon final distribution to them of the <u>Principal Proceeds</u> from liquidation of the Collateral, which distribution was scheduled to be made on the Redemption Date.

54. The foregoing undisputed facts render Franklin Advisers ineligible, pursuant to the clear, unambiguous terms of the Indenture, to receive any Contingent Collateral Management Fee.

55. Indenture Section 11.1(a) contains a clear Priority of Payments with regard to all distributable cash. Such a Priority of Payments is often referred to as a "waterfall" because funds cascade downward through each step, if payable at that step, and any residual funds pool at the bottom. As with a natural waterfall, funds never travel back up the Priority of Payments waterfall once they reach the bottom.

56. The Priority of Payments waterfall set forth in the Indenture calls for any Contingent Collateral Management Fee to be paid out of Principal Proceeds at a higher step in the waterfall ("<u>Principal Proceeds Waterfall Step J</u>") than the payment of Principal Proceeds to the Preferred Shares. *See* Indenture § 11.1(a)(ii)(J). Preferred Shares are located at the bottom of the Priority of Payments waterfall ("<u>Principal Proceeds Waterfall Step L</u>"), where all residual Principal Proceeds not payable at any higher step pool, for final distribution to the Class C-2 Notes and Preferred Shares. *See* Indenture § 11.1(a)(ii)(L).

57. Principal Proceeds Waterfall Step J calls for Principal Proceeds to be applied "to the payment of all due and unpaid Contingent Collateral Management Fees. . . ." However,

because as of the Redemption Date the Preferred Shares had not previously received a 12% or greater internal rate of return, the threshold requirement that a Contingent Collateral Management Fee be paid "<u>only to the extent that</u> (i) the holders of the Preferred Shares <u>have received</u> an internal rate of return of 12% per annum," was not satisfied. Therefore, no Contingent Collateral Management Fee was "due and unpaid" as of the Redemption Date. *See* Indenture p. 16 & § 11.1(a)(ii)(J).

58.     The definition of "Contingent Collateral Management Fee" is quite detailed. In addition to the above-quoted threshold standard for determining whether Franklin Advisers is eligible to receive <u>any</u> Contingent Collateral Management Fee, the definition of Contingent Collateral Management Fee on pages 16 through 17 of the Indenture goes on to provide a specific formula for calculating the <u>amount</u> of any Contingent Collateral Management Fee that might be payable:

> [T]he Contingent Collateral Management Fee payable on each Distribution Date will be **equal to the lesser of** (i) the accrued and unpaid Contingent Collateral Management Fee (consisting of the Contingent Collateral Management Fee accrued for the related Interest Accrual Period and any such fee accrued for prior Due Periods but not paid on any prior Distribution Date) that is payable on such Distribution Date as described above, **and** (ii) 40% of (A) the Interest Proceeds or Principal Proceeds, as applicable, available and permitted to be used for such purpose in accordance with the Priority of Payments, minus (B) the amount necessary to provide an internal rate of return (calculated as described above) to Holders of Preferred Shares of 12% per annum for the period from the Closing Date through such Distribution Date.

59.     Because the threshold for Franklin Advisers to receive any Contingent Collateral Management Fee has not been crossed, the detailed formula found on pages 16 through 17 of the Indenture need not be applied. However, even if one were to apply that formula, the result would remain that no Contingent Collateral Management Fee is payable to Franklin Advisers. Very simply, there is no "accrued but unpaid Contingent Collateral Management Fee" as of the

Redemption Date because, pursuant to the clear, unambiguous language of the Indenture, a Contingent Collateral Management Fee will accrue only if it has become payable, but has gone unpaid. This had not happened prior to the Redemption Date. Consequently, the numeric input to line (i) in the "lesser of" equation above is zero. Because the equation calls for the lesser of (i) and (ii), the equation ends there. However, even if one were to incorrectly assume a positive numeric input for line (i), the result would be the same. This is so because the numeric input to line (ii) in the "lesser of" equation also is zero, since there are no "Interest Proceeds or Principal Proceeds, as applicable, available and permitted to be used for such purpose in accordance with the Priority of Payments" (Indenture, p. 17).

60.   As further confirmation that all Principal Proceeds remaining at Principal Proceeds Waterfall Step L are distributable solely to holders of the Preferred Shares, Section 11.1(a) of the Indenture provides that it is subject to the terms of Article 9. Indenture Article 9 expressly confirms the Class C-2 Notes' and Preferred Shares' entitlement to all proceeds of liquidation remaining at the bottom of the Principal Proceeds waterfall as of the Redemption Date. In essence, it affirms that in no circumstance will Principal Proceeds flow up the waterfall from Principal Proceeds Waterfall Step L – not even if the Preferred Shareholders reach a 12% internal rate of return at Principal Proceeds Waterfall Step L as of the Redemption Date, and surplus Principal Proceeds remain:

> After payment of the Notes and the expenses of the Co-Issuers on any Redemption Date, the Trustee shall pay (i) first, to the Class C-2 Redemption Additional Interest and (ii) second to the Preferred Share Paying Agent, for distribution to the Holders of the Preferred Shares as liquidating distributions, all the remaining proceeds from the sale and/or termination of the Collateral and all other funds in the Collection of the Account.

(Indenture, § 9.1(e)).

61. Once the Redemption occurs and the Collateral is liquidated, there is only the one final distribution to be made on the Redemption Date. There are no further Distribution Dates.

62. Accordingly, if an expense was not due and payable as of the Redemption Date and therefore, could not be paid pursuant to the Priority of Payment waterfall on the Redemption Date, then it will not be paid because there will be no subsequent Distribution Dates.

63. Franklin Advisers seeks to make Principal Proceeds flow up from the bottom of the Priority of Payments waterfall, in violation of the unambiguous, controlling terms of the Indenture. For these reasons, as more fully explained below, The Crossclaiming Defendants should be granted judgment, as requested herein.

### IN AND FOR A CROSSCLAIM FOR RELIEF vs. FRANKLIN ADVISERS, FRANKLIN CLO II CORP., AND FRANKLIN CLO II LTD.

64. Crossclaiming Defendants incorporate Paragraphs 1 - 63, as if set forth at length herein.

65. For the reasons set forth above, Franklin Advisers is not entitled to payment of any Contingent Collateral Management Fee because the Contingent Collateral Management Fee did not accrue prior to, and did not become due and payable on, the Redemption Date.

66. The controlling language of the Indenture is clear and unambiguous, and not subject to any reasonable interpretation that supports Franklin Advisers' claim of entitlement to a Contingent Collateral Management Fee.

WHEREFORE, Crossclaiming Defendants respectfully requests that this Court enter declaratory judgment against Franklin Advisers, Franklin CLO II Corp., and Franklin CLO II LTD., and in favor of Crossclaiming Defendants, (i) declaring that Franklin Advisers is not entitled to payment of any Contingent Collateral Management Fee; (ii) declaring that all residual

Principal Proceeds available as of the Redemption Date, after making all required payments pursuant to the terms of the Indenture, be paid exclusively to holders of the Preferred Shares in respect of their Preferred Shares holdings; (iii) ordering that all residual Principal Proceeds available as of the Redemption Date, after making all required payments pursuant to the terms of the Indenture, be paid promptly, and exclusively, to holders of the Preferred Shares in respect of their Preferred Shares holdings; (iv) declaring that no other party is entitled to any Principal Proceeds distributed to Crossclaiming Defendants pursuant to Order of the Court; and (v) granting Crossclaiming Defendants such other and further relief as is just.

### IN AND FOR A CROSSCLAIM FOR RELIEF FOR DECLARATORY JUDGMENT, PURSUANT TO 28 U.S.C. § 2201 vs. ALL PARTIES

67.  Crossclaiming Defendants incorporate Paragraphs 1 - 66, as if set forth at length herein.

68.  For the reasons set forth above, no Interpleader Defendant or other party has any interest in or right to any of the Interpleaded Funds, except by virtue of such party's rights as a holder of Class C-2 Notes or Preferred Shares.

WHEREFORE, Crossclaiming Defendants respectfully request that this Court enter declaratory judgment, (i) declaring that Franklin Advisers is not entitled to payment of any Contingent Collateral Management Fee; (ii) declaring that all residual Principal Proceeds available as of the Redemption Date, after making all required payments pursuant to the terms of the Indenture, be paid exclusively to holders of the Preferred Shares in respect of their Preferred Shares holdings; (iii) ordering that all residual Principal Proceeds available as of the Redemption Date, after making all required payments pursuant to the terms of the Indenture, be paid exclusively to holders of the Preferred Shares in respect of their Preferred Shares holdings; (iv)

declaring that no other party is entitled to any Principal Proceeds distributed to any of the Crossclaiming Defendants pursuant to Order of the Court; and (v) granting Crossclaiming Defendants such other and further relief as is just.

Dated:  April 20, 2007

                                         Counsel for the Crossclaiming Defendants

                                         REED SMITH LLP

                                         By: /s/ James C. McCarroll
                                              James C. McCarroll (JM 2758)
                                              Lance Gotthoffer (LG 5932)
                                              599 Lexington Avenue
                                              New York, New York 10022
                                              (212) 521-5400

# EXHIBIT A

**"Contingent Collateral Management Fee":** The fee payable for each Interest Accrual Period to the Collateral Manager in arrears on each Distribution Date pursuant to Section 8 of the Collateral Management Agreement and Section 11.1 hereof, in an amount (as certified by the Collateral Manager to the Trustee), equal to 0.25% per annum (calculated on the basis of a 360-day year consisting of twelve 30-day months) of the sum of (i) the Aggregate Principal Amount of the Pledged Collateral Obligations and Eligible Investments representing Principal Proceeds outstanding on the first day of the Due Period preceding such Distribution Date plus (ii) all Cash representing Principal Proceeds held by, or on behalf of, the Trustee for the benefit of the Noteholders on the first day of the Due Period preceding such Distribution Date, prorated for the number of days in the related Due Period; provided, however, that the Contingent Collateral Management Fee will be payable on each Distribution Date only to the extent that (i) the holders of the Preferred Shares have received an internal rate of return of 12% per annum (based upon quarterly payment periods and calculated using an assumed purchase price of $1.00 per Preferred Share) on the amount of the initial purchase price of the Preferred Shares for the period from the Closing Date through such Distribution Date and (ii) funds are available for such purpose in accordance with the Priority of Payments described under Section 11.1 hereof; provided, further, that the Contingent Collateral Management Fee payable on each Distribution Date will be equal to the lesser of (i) the accrued and unpaid Contingent Collateral Management Fee (consisting of the Contingent Collateral Management Fee accrued for the related Interest Accrual Period and any such fee accrued for prior Due Periods but not paid on any prior Distribution Date) that is payable on such Distribution Date as described above and (ii) 40% of (A) the Interest Proceeds or Principal Proceeds, as applicable, available and permitted to be used for such purpose in accordance with the Priority of Payments minus (B) the amount necessary to provide an internal rate of return (calculated as described above) to Holders of Preferred Shares of 12% per annum for the period from the Closing Date through such Distribution Date; provided, further, that such amount shall not be less than zero. (INDENTURE pp. 16-17)

## WHEN DOES A CONTINGENT COLLATERAL MANAGEMENT FEE BECOME PAYABLE?  WHEN DOES IT ACCRUE?

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | |
|---|---|---|---|---|---|---|---|
| Distribution Date | Payments to Preferred Share Holders | IRR | 12% IRR Met (Y / N) | Contingent Collateral Management Fee Payable (Y/N) | Interest or Principal Proceeds Available to Pay Contingent Collateral Management Fee | Contingent Collateral Management Fee Accrued | |
| 07/26/2001 | $ (41,100,000) | - | | | | | |
| 11/28/2001 | $ 3,699,349 | -99.9% | N | N | N/A | $ - | |
| 02/28/2002 | $ 3,547,964 | -97.0% | N | N | N/A | $ - | |
| 05/28/2002 | $ 2,998,967 | -89.4% | N | N | N/A | $ - | |
| 08/28/2002 | $ 3,463,838 | -76.3% | N | N | N/A | $ - | |
| 11/28/2002 | $ 2,429,743 | -66.0% | N | N | N/A | $ - | |
| 02/28/2003 | $ 3,290,372 | -52.5% | N | N | N/A | $ - | |
| 05/28/2003 | $ 2,742,435 | -42.4% | N | N | N/A | $ - | |
| 08/28/2003 | $ 3,033,758 | -32.6% | N | N | N/A | $ - | |
| 11/28/2003 | $ 2,644,272 | -25.1% | N | N | N/A | $ - | |
| 02/28/2004 | $ 2,193,466 | -19.6% | N | N | N/A | $ - | |
| 05/28/2004 | $ 2,214,591 | -14.7% | N | N | N/A | $ - | |
| 08/28/2004 | $ 1,523,079 | -11.6% | N | N | N/A | $ - | |
| 11/28/2004 | $ 1,328,457 | -9.1% | N | N | N/A | $ - | |
| 02/28/2005 | $ 1,240,510 | -6.9% | N | N | N/A | $ - | |
| 05/28/2005 | $ 1,078,564 | -5.1% | N | N | N/A | $ - | |
| 08/28/2005 | $ 891,142 | -3.8% | N | N | N/A | $ - | |
| 11/28/2005 | $ 817,566 | -2.6% | N | N | N/A | $ - | |
| 02/28/2006 | $ 616,534 | -1.7% | N | N | N/A | $ - | |
| 05/28/2006 | $ 1,302,497 | -0.1% | N | N | N/A | $ - | |
| 08/28/2006 | $ 1,214,216 | 1.4% | N | N | N/A | $ - | |
| 11/28/2006 | $ 1,288,069 | 2.7% | N | N | N/A | $ - | |
| 02/28/2007 | $ 2,338,652 | 4.9% | N | N | N/A | $ - | Interest Proceeds |
| 02/28/2007 | $ 10,195,828 | 12.0% | Y | N | N/A | $337,287.32 | Principal Proceeds |