UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X
THE BANK OF NEW YORK TRUST COMPANY, :
N.A., AS TRUSTEE, :
                Interpleader Plaintiff, :
       -against- :
        :
FRANKLIN ADVISERS, INC., FRANKLIN :   Case No. 07-CV-1746 (VM)
CLO II, LTD., FRANKLIN CLO II, CORP., CDO :
PLUS MASTER FUND, LTD., CHASE MANHATTAN :   *(Electronically Filed)*
BANK LONDON NOMINEE FOR SEIRA 13 as a :
nominee, DEUTSCHE BANK SECURITIES INC. as a :
nominee, GENSEC IRELAND LIMITED as a nominee, :
HARE & CO. as a nominee, MAC & CO. as a nominee, :
MASSACHUSETTS MUTUAL LIFE INSURANCE CO. :
as a nominee, MERRILL LYNCH, PIERCE, FENNER & :
SMITH INC. as a nominee, SUN LIFE ASSURANCE :
CO. OF CANADA as a nominee, TEMPLETON :
GLOBAL ADVISORS, LTD. as a nominee, AND :
   :
"JOHN DOE #1" through "JOHN DOE #12," the :
last twelve names being fictitious and unknown to :
plaintiff, the persons or parties intended being the :
beneficial owners of the Preferred Shares, the :
Series I Combination Security, and the Class C-2 Notes :
under the Indenture as more fully described in the :
Complaint, :
                Interpleader Defendants. :
   :
---------------------------------------------------------------- X

**FRANKLIN ADVISERS' MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS THE
<u>CROSS-CLAIMS OF CDO PLUS AND MERRILL LYNCH</u>**

SCHINDLER COHEN & HOCHMAN LLP
100 Wall Street, 15th Floor
New York, New York 10005

*Attorneys for Franklin Advisers, Inc.*

{00031260}

# **TABLE OF CONTENTS**

TABLE OF CONTENTS .................................................................................................................i

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT .....................................................................................................1

STATEMENT OF FACTS ..............................................................................................................3

      The CLO II Transaction Payment Structure ......................................................................4

      The Contingent Collateral Management Fee .....................................................................6

      The Preferred Shareholders Called For An Optional Redemption
      In February 2007 .................................................................................................................7

      Franklin Advisers Certified That It Was Entitled To a $7.22
      Million CCMF ....................................................................................................................7

PROCEDURAL POSTURE ............................................................................................................8

ARGUMENT ...................................................................................................................................8

    I.  THE PLAIN LANGUAGE OF THE INDENTURE MANDATES
        THAT PAYMENTS TO BE RECEIVED BY THE PREFERRED
        SHAREHOLDERS ON THE REDEMPTION DATE BE INCLUDED
        IN THE COMPUTATION OF THE CCMF ....................................................................8

    II.  THE SHAREHOLDER DEFENDANTS' OTHER ARGUMENTS
         ARE MERITLESS ...........................................................................................................11

         A.  The CCMF Need Not Be "Payable" To Accrue ....................................................11

         B.  Section 9.1 of the Indenture Has No Impact on Payment
            of the CCMF ..........................................................................................................13

    III.  FRANKLIN ADVISERS IS ENTITLED TO RECEIVE ITS CCMF ............................13

CONCLUSION ..............................................................................................................................14

# **TABLE OF AUTHORITIES**

**Cases**

*Bank of Taiwan New York Agency v. Granite State Ins. Co.*,
No. 03 Civ. 0682, 2003 WL 21540664 (S.D.N.Y. July 9, 2003) .................................................... 8

*Barnum v. Millbrook Care Ltd. P'ship,*
 850 F. Supp. 1227 (S.D.N.Y. 1994)............................................................................................. 8

*Crane Co. v. Coltec Indus., Inc.*,
171 F.3d 733 (2d Cir. 1999).......................................................................................................... 8

*In re Stock Exchanges Options Trading Antitrust Litigation*,
No. 99 Civ. 0962, 2005 WL 1635158 (S.D.N.Y. July 8, 2005) ..................................................... 12

*The McGraw-Hill Cos. v. Vanguard Index Trust,*
139 F. Supp. 2d 544 (S.D.N.Y 2001)............................................................................................. 10

Defendant-in-interpleader Franklin Advisers, Inc. ("Franklin Advisers"), respectfully submits this memorandum of law in support of its motion to dismiss the cross-claims of defendants-in-interpleader CDO Plus Master Fund, Ltd. ("CDO Plus") and Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch," and together with CDO Plus, the "Shareholder Defendants") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

This is a case of opportunistic investors seeking an undeserved windfall. Franklin Advisers acted as the collateral manager for a collateralized loan transaction ("CLO II" or the "CLO II Transaction"). The Shareholder Defendants were purchasers of preferred shares in the CLO II Transaction, which entitles them to receive the residual proceeds from the sale of collateral after more senior securities holders are paid. The Indenture (defined below), which is the principal document governing CLO II, provides that Franklin Advisers is entitled to an incentive fee, known as a contingent collateral management fee ("CCMF"), for garnering returns for the preferred shareholders of 12%.[1] In fact, the preferred shareholders' returns on CLO II were approximately 17%. Despite these already-impressive returns, the Shareholder Defendants wish to inflate their profits artificially by depriving Franklin Advisers of its well-earned $7.22 million CCMF.

But Franklin Advisers' entitlement to these fees is clear. The Indenture provides that if and when Franklin Advisers achieves a return of 12% or more for the preferred shareholders (the "12% hurdle"), it is entitled to receive its CCMF. Indeed, the Shareholder Defendants admit that, as of the final date on which the CLO II Transaction proceeds were to be distributed,

---

[1] As required by the Indenture, all of the rates of return herein are internal rates of return measured as the return over an assumed $1.00 purchase price from the closing date of the CLO II Transaction.

Franklin Advisers had in fact achieved a return of over 12% and thus cleared the 12% hurdle. (SDCC[2] at ¶ 53.)

The Shareholder Defendants nonetheless contend that the 12% hurdle for the CCMF must be calculated *ignoring* the amounts that the preferred shareholders were to receive on the final date of distribution of the proceeds of the CLO II Transaction (which is defined as the "Redemption Date" in the Indenture). (SDCC at ¶¶ 52-7.) If the amounts to be distributed on the Redemption Date are not taken into account, Franklin Advisers has not cleared the 12% hurdle.

The Shareholder Defendants' interpretation, though, is flatly contradicted by the express terms of the Indenture. The Indenture specifically addresses this crucial issue by requiring that all of the funds that are to be received by the preferred shareholders "*through*" the Redemption Date (which, under the Indenture is admittedly also a "Distribution Date") be included in calculating the 12% hurdle:

> [The CCMF] will be payable on each Distribution Date only to the extent that . . . the holders of the Preferred Shares have received an internal rate of return of 12% per annum . . . on the amount of the initial purchase price of the Preferred Shares for the period from the Closing Date **through such Distribution Date**.

(*See* Indenture at § 1.1 CCMF Definition (emphasis added).) Consequently, the Shareholder Defendants' primary argument simply ignores the plain language of the Indenture. And because the Shareholder Defendants concede that the 12% hurdle is reached if the payments made on the Redemption Date are included in calculating the CCMF, the CCMF must be paid. (SDCC at ¶ 53.)

---

[2]   "SDCC" herein refers to the Shareholder Defendants' Answer and Cross-Claims, dated April 20, 2007.

Because the Shareholder Defendants' arguments[3] are at war with the unambiguous language of the Indenture, they should be rejected and Franklin Advisers' motion to dismiss should be granted.

## STATEMENT OF FACTS

The CLO II Transaction involved the sale of investment instruments collateralized by a pool of loan obligations. (Complaint at ¶¶ 1-2; SDCC at ¶ 48.)[4]  The indenture among Franklin CLO II, Ltd. (the "Issuer"), Franklin CLO II, Corp. (the "Co-Issuer") and The Chase Manhattan Bank, dated July 26, 2001 (the "Indenture"),[5] sets forth the rights and obligations of the parties to the CLO II Transaction. (*See* Complaint at ¶¶ 1-2, 26; SDCC at ¶ 49.)  These parties include Franklin Advisers, which served as the collateral manager and, *inter alia*, selected the underlying collateral loans based on a variety of criteria designed to maximize returns and ensure the satisfaction of the obligations to the CLO II investors. (*See* Complaint at ¶ 3; SDCC at ¶ 50; *see also* FACC at ¶ 62.)[6]  The Issuer sold such instruments to investors, primarily in the form of notes. (Complaint at ¶ 2, SDCC at ¶48.)

The notes were issued in various classes based on, among other things, (i) the expected ratings of each note class as determined by Moody's and Standard & Poor's and (ii) the interest rate for each note class. (Indenture at §§ 1.1 "Collateral Obligation" Definition, 2.3; *see also* Complaint at ¶ 2; SDCC at ¶¶ 2, 48.)  For example, the Class A-1 notes were expected to obtain an "Aaa" rating by Moody's and an "AAA" rating by Standard & Poor's and pay to the holders

---

[3]   The Shareholder Defendants make two secondary arguments as to why no CCMF is due to Franklin Advisers, both of which, as demonstrated below, are similarly inconsistent with the terms of the Indenture.

[4]   "Complaint" herein refers to the complaint-in-interpleader herein, dated February 28, 2007.  All paragraphs of the Complaint cited herein have either been admitted, or at least not disputed, by the Shareholder Defendants in the corresponding paragraphs of the SDCC.

[5]   Exhibit A to the Complaint.

[6]   "FACC" herein refers to the Answer and Cross-Claims of Franklin Advisers, Inc., dated April 20, 2007.

3

of such notes an interest rate of 0.410% above the 3-month LIBOR.  (*See* Indenture at § 2.3.) Lower classes of notes were expected to receive lower ratings and therefore higher interest rates. (*See id*.)

The CLO II Transaction structure also offered qualified buyers the opportunity to purchase equity in the Issuer.  (SDCC at ¶ 48.)  As equity holders, this class of investors – the holders of preferred shares (the "Preferred Shareholders") – bore the greatest risk of loss of principal due to any defaults in the collateral pool, as they are to receive repayments on their investment only after all of the noteholders and all fees and expenses (including all management fees to Franklin Advisers) are paid.  (*See* Indenture at § 11.1.)

**The CLO II Transaction Payment Structure**

Pursuant to the Indenture, the trustee for the CLO II Transaction – in this case The Bank of New York Trust Company, N.A., as the successor to The Chase Manhattan Bank (the "Trustee") – held the collateral loans in trust.  (Complaint at ¶¶ 1, 24; Indenture "Granting Clauses.")  All interest proceeds and principal proceeds flowing from the collateral loans were to be distributed by the Trustee according to two sets of detailed priorities of payments (which are also sometimes known as "waterfalls").  (SDCC at ¶¶ 55-56; *see generally* Indenture at § 11.1(a) (listing the priority of payments for interest proceeds and principal proceeds).)  For example, interest proceeds (*i.e.*, payments flowing from the interest on the underlying collateral loans) are applied first to taxes owed by the Issuer, second, to various administrative expenses, third to the Class A-1 noteholders, and so on, through seventeen different steps, each of which includes different classes of payments and/or types of noteholders.  (Indenture at §§ 11.1(a)(i)(A)-(B).)

According to the Indenture and the CMA,[7] the CCMF is payable from both the interest

---

[7]  "CMA" herein refers to the Collateral Management Agreement, between the Issuer and Franklin Advisers, dated July 26, 2001, Exhibit B to the Complaint.

4

proceeds and principal proceeds flowing from the collateral.  (*See* SDCC at ¶¶55-57; Indenture at §§ 11.1(a)(i)(O) and 11.1(a)(ii)(J); FACC at ¶ 65.)

The Preferred Shareholders are last in priority of payment of both the interest and principal.  (SDCC at ¶56; Indenture at §§ 11.1(a)(i)(Q) and 11.1(a)(ii)(L); FACC at ¶¶ 66.)  The Preferred Shareholders, therefore, do not receive their shares of the interest proceeds or principal proceeds until, among other things, all taxes, administrative expenses, payments to noteholders, and payment of fees (both guaranteed and contingent) to Franklin Advisers have been distributed.  (*See* SDCC at ¶ 56; *see generally* Indenture at § 11.1(a).)

Pursuant to the Indenture, all payments to the noteholders and the Preferred Shareholders, whether of interest proceeds or principal proceeds, were to be disbursed only on Distribution Dates, which are defined as November 28, February 28, May 28, and August 28 of each year after the Closing.  (*See* Indenture at § 1.1 "Distribution Date" Definition; FACC at ¶ 67.)  The maturity date for the CLO II notes was August 28, 2013.  (*See* Indenture at § 2.3.)

However, instead of allowing the CLO II notes to reach maturity, the Indenture permits a majority of Preferred Shareholders, at their discretion, to trigger an "Optional Redemption," directing the Issuers to redeem the notes on any Distribution Date after February 28, 2005.  (Indenture at § 9.1(a).)  Such an Optional Redemption requires the sale of all the collateral securing the notes.  (Indenture at § 9.1(a); Complaint at ¶ 27-28.)  The date upon which an Optional Redemption can occur is defined as the "Redemption Date," which must be one of the defined Distribution Dates following February 28, 2005.  (Indenture at §§ 1.1 "Redemption Date" Definition; SDCC at ¶ 51, n. 2.)

**The Contingent Collateral Management Fee**

Pursuant to the terms of the Indenture and the CMA, Franklin Advisers is entitled to various fees for performing certain duties on behalf of the Issuer of the collateralized debt, including, *inter alia*: (i) supervising and directing the investment and reinvestment of the collateral and (ii) monitoring the collateral on an ongoing basis. (SDCC at ¶ 50; CMA at 1-4.) Such fees include: (a) the Base Collateral Management Fee, (b) the Subordinated Collateral Management Fee (the "SCMF"), and (c) the CCMF, which, as described above, is an incentive fee with respect to Franklin Advisers' management of the collateral to reward financial performance above the 12% hurdle. (SDCC at ¶ 50.)

The definition of the CCMF in the Indenture sets forth the mechanism for calculating the CCMF. The base calculation of the fee is approximately equal to 0.25% per annum of the sum (on the first day of the time period prior to a given Distribution Date) of (i) the outstanding principal amount of the corporate loans and short term investments included in the collateral plus (ii) all cash representing principal proceeds held by the Trustee for the benefit of the Noteholders (this formula hereinafter referred to as the "Base CCMF"). (Indenture at § 1.1 CCMF Definition.) In addition, payment of the CCMF on a given Distribution Date (or Redemption Date) is limited by three conditions:

(1)   the CCMF is only paid to Franklin Advisers at that time to the extent that the Preferred Shareholders receive an internal rate of return ("IRR") of 12% per annum over an assumed $1.00 purchase price, from the closing date through, and including, the given Distribution Date (which is the "12% hurdle");

6

> (2) the CCMF is only paid to Franklin Advisers at that time to the extent that there are sufficient funds for such payment at that point in the priority of payments; and
>
> (3) the amount of the CCMF paid to Franklin Advisers is to be the lesser of (i) the Base CCMF and (ii) 40% of the interest and/or principal proceeds available to be distributed to the Preferred Shareholders in excess of the amount necessary to obtain a 12% IRR for the Preferred Shareholders (the Preferred Shareholders would receive the other 60% of amounts over the amount required to give them a 12% IRR).[8]

(Indenture at § 1.1 CCMF Definition; SDCC at ¶ 58; FACC at ¶ 69.)

**The Preferred Shareholders Called For An Optional Redemption In February 2007**

In January 2007, a purported majority of the Preferred Shareholders informed the Trustee that they wished to initiate an Optional Redemption pursuant to § 9.1 of the Indenture. (Complaint at ¶¶ 27-8; SDCC at ¶¶ 27-8.) On February 7, 2007, consistent with its managerial duties, Franklin Advisers liquidated the collateral by auction. (Complaint at ¶ 35; SDCC at ¶ 35; FACC at ¶¶ 35, 73.)

**Franklin Advisers Certified That It Was Entitled To a $7.22 Million CCMF**

Utilizing the formula set forth in the definition of the CCMF in the Indenture, Franklin Advisers certified that it was entitled to a CCMF of $7,220,205.60 as of the February 28, 2007 Redemption Date. (Complaint at ¶ 33 and Exhibit I thereto.) Franklin Advisers' calculation of the CCMF took into account the amounts of principal proceeds that were to be distributed to the Preferred Shareholders on the Redemption Date in determining that the 12% hurdle had been

---

[8] For ease of reference, this final limiting condition on the CCMF will hereinafter be referred to as the "CCMF Limiting Formula."

7

met. ***The Shareholder Defendants admit that if such principal proceeds are included in the calculation of IRR, the 12% hurdle is, indeed, reached***. (SDCC at ¶ 53.)

## PROCEDURAL POSTURE

Shortly after triggering the Optional Redemption, CDO Plus wrote to Franklin Advisers asserting, *inter alia*, that Franklin Advisers was not entitled to its CCMF. (Complaint at ¶ 30; SDCC at ¶ 30.) Franklin Advisers' transactional counsel wrote back, vigorously disputing this claim. (Complaint at ¶ 32; SDCC at ¶ 32.) In light of the existing dispute, the Trustee commenced this interpleader action and deposited $28,249,181.73 with the Registry of the Court. (*See* Order dated Feb. 28, 2007.) These funds represent all undistributed proceeds from the liquidation of the collateral below (and including) the CCMF step in the Indenture's priorities of payments. (Complaint at ¶¶ 35, 37.)

## ARGUMENT

The interpretation of an unambiguous contract, such as the Indenture, is a matter of law appropriate for a summary disposition pursuant to Federal Rule of Civil Procedure 12(b)(6). *See, e.g., Crane Co. v. Coltec Indus., Inc.*, 171 F.3d 733, 737 (2d Cir. 1999) ("[i]f the parties' intent is unambiguously conveyed by the plain meaning of the agreements, then its 'interpretation is a matter of law'").[9] Moreover, "[c]lear contractual language does not become ambiguous simply because the parties to the litigation argue different interpretations." *Bank of Taiwan New York Agency v. Granite State Ins. Co.,* No. 03 Civ. 0682, 2003 WL 21540664, at *6 (S.D.N.Y. July 9, 2003). Thus, the Court "need not accept as true" the allegations of the Shareholder Defendants that are contradicted by the plain language of the Indenture. *Barnum v. Millbrook Care Ltd. P'ship,* 850 F. Supp. 1227, 1232-33 (S.D.N.Y. 1994).

---

[9] Because the Indenture is referred to in, and incorporated into, both the Complaint and the SDCC, this Court may consider its terms to decide Franklin Advisers' motion. *See, e.g., Barnum v. Millbrook Care Ltd. P'ship*, 850 F. Supp. 1227, 1232-33 (S.D.N.Y. 1994) (the court may consider documents made a part of a pleading).

8

**I.**

**THE PLAIN LANGUAGE OF THE INDENTURE MANDATES THAT PAYMENTS TO BE RECEIVED BY THE PREFERRED SHAREHOLDERS ON THE REDEMPTION DATE BE INCLUDED IN THE COMPUTATION OF THE CCMF**

The Shareholder Defendants' primary objection to payment of the CCMF earned by Franklin Advisers is that paying it would disrupt the "natural waterfall" of the priority of payments and result in a waterfall flowing uphill. (*See* SSDC at ¶ 55.) Their claim boils down to the proposition that the principal proceeds to be distributed to the Preferred Shareholders on the Redemption Date should not be taken into account when measuring satisfaction of the 12% hurdle for the CCMF. (SDCC at ¶¶ 53, 57, 59.) But two separate portions of the CCMF definition make clear that the calculation of the CCMF requires a ***simultaneous calculation*** of the amount that will be payable to the Preferred Shareholders to achieve a 12% IRR.

First, the Indenture expressly provides that amounts received "***through***" a Distribution Date (including the Redemption Date) ***are to be taken into*** account in calculating the CCMF. Thus, the CCMF

> will be payable on ***each Distribution Date*** only to the extent that . . . the holders of the Preferred Shares have received an internal rate of return of 12% per annum . . . on the amount of the initial purchase price of the Preferred Shares for the period from the Closing Date ***through such Distribution Date***.

(Indenture at § 1.1 CCMF Definition.) The phrase ***"through such Distribution Date"*** in this provision – by itself – disposes of the Shareholder Defendants' misinterpretation. The only conceivable interpretation of the cited language is that the calculation of whether the 12% hurdle has been reached requires an accounting that includes all amounts that will be received ***on*** the relevant Distribution Date (which, in this case, is the Redemption Date). By contrast, the Shareholder Defendants' interpretation renders this phrase meaningless.

9

Second, the CCMF Limiting Formula similarly requires looking forward to take into account what the Preferred Shareholders *will* receive on that Distribution Date.  The CCMF definition limits the amount of the CCMF payable to the lesser of the Base CCMF and 40% of (A) the interest proceeds or principal proceeds remaining in at that point in the priority of payments, minus (B) "the amount necessary to provide an internal rate of return . . . to Holders of Preferred Shares of 12% per annum for the period from the Closing Date *through such Distribution Date* . . . ."  (Indenture at § 1.1 CCMF Definition (emphasis added).)  Thus, the Indenture expressly requires that CCMF be calculated by taking into account the amounts that are to be distributed to the Preferred Shareholders on that Distribution (or Redemption) Date.

The Shareholder Defendants attempt to avoid the unmistakable meaning of these provisions by ignoring them and, instead, selectively quoting only the language that appeals to them.  For example, they assert that "the threshold requirement that a Contingent Collateral Management Fee be paid 'only to the extent that (i) the holders of the Preferred Shares have received an internal rate of return of 12% per annum,' was not satisfied."  (SDCC at ¶ 57 (internal emphasis omitted).)  Their quotation omits the crucial phrase "for the period from the Closing Date *through such Distribution Date.*"  ((Emphasis added); *see also* SDCC at ¶ 52 (eliding the same phrase).)

The law, however, does not permit a party to prevail merely through the persistent (and misleading) use of ellipses.  Rather, "it is a cardinal rule of contract interpretation that a court must construe the terms of an agreement as a whole and in a manner that gives effect to the mutual intent of the parties."  *The McGraw-Hill Cos. v. Vanguard Index Trust,* 139 F. Supp. 2d 544, 552 (S.D.N.Y 2001) (internal citation omitted).  "When interpreting a contract, the entire contract must be considered so as to give each part meaning."  *Id.* (internal citation omitted).

Thus, the law requires that the Indenture provisions – clearly mandating the inclusion of the Redemption Date payments to the Preferred Shareholders in the 12% hurdle determination – be given effect.

Finally, requiring payments made *through* the Redemption Date to be included in measuring satisfaction of the 12% hurdle, does not, as the Shareholder Defendants would have it, subvert the natural order of the world by creating an anti-gravity waterfall.  Indeed, the Shareholder Defendants have taken their "waterfall" metaphor altogether too literally.  Money is not water.  And there is no reason that the amounts to be distributed to the Preferred Shareholders on the Redemption Date cannot be mathematically ascertained and used to calculate the CCMF *before* the actual payment of funds to either of these steps in the priority of payments is made.

## II.

## THE SHAREHOLDER DEFENDANTS' OTHER ARGUMENTS ARE MERITLESS

### A.      The CCMF Need Not Be "Payable" To Accrue

The Shareholder Defendants also argue that even if the 12% hurdle is reached, there is still no CCMF due to Franklin Advisers because no amount of CCMF had previously accrued.  (SDCC at ¶ 59.)  This argument is based upon the CCMF Limiting Formula.  The CCMF Limiting Formula requires that the amount of the CCMF to be paid equal the lesser of:  (i) accrued and unpaid CCMF amounts; and (ii) 40% of the amount of money available over that necessary to yield the Preferred Shareholders an IRR of 12%.  (Indenture at § 1.1 CCMF Definition.)  By claiming that the CCMF did not accrue throughout the life of the CLO II Transaction, the Shareholder Defendants argue that the first prong of the CCMF Limiting formula equals zero and, therefore, no CCMF is due.  (SDCC at ¶ 59.)

11

The crux of this claim – put forward ***without the benefit of any citation to the Indenture*** – is that the CCMF does not accrue unless ***"it has become payable, but has gone unpaid."*** (SDCC at ¶ 59 (emphasis added).) To accept and give effect to the Shareholder Defendants' interpretation would require the Court to write new language into the Indenture, which is forbidden by established principles of contract interpretation. *See In re Stock Exchanges Options Trading Antitrust Litigation*, No. 99 Civ. 0962, 2005 WL 1635158, at *7 (S.D.N.Y. July 8, 2005) (refusing to imply language in a contract, since doing so "would be to make a new contract under the guise of contractual interpretation rather than to enforce the writing according to its terms.")

The Indenture clearly contemplates that the Base CCMF will accrue, by calling for payment of the *"**accrued and unpaid** Contingent Collateral Management Fee (**consisting of the Contingent Collateral Management Fee accrued for the related Interest Accrual Period and any such fee accrued for prior Due Periods but not paid on any prior Distribution Date**)* that is payable on such Distribution Date as described above." (Indenture at § 1.1 CCMF Definition (emphasis added).) Moreover, the priority of payments specifically requires the payment of "all accrued and unpaid" CCMFs. (*Id.* at § 11.1(a)(i)(O)(2).) However, unlike the priority of payments provision governing the SCMF, a distinct management fee, ***there is no requirement*** that the accrued CCMF have been "***due and payable*** to the Collateral Manager on prior Distribution Dates." (*Compare* Indenture at § 11.1(a)(i)(N)(2) and § 11.1(a)(i)(O)(2) (emphasis added).) Thus, the Indenture provides that (1) the CCMF will accrue; and (2) that accrued amounts will be paid, regardless of whether or not they were previously "due and payable." Accordingly, the Shareholder Defendants' claim that the CCMF did not accrue over the life of the CLO II Transaction should be rejected.

**B.     Section 9.1 of the Indenture Has No Impact on Payment of the CCMF**

The Shareholder Defendants' final theory for denying payment of the CCMF is their claim that § 9.1 of the Indenture, which concerns procedures for an Optional Redemption, indicates that Class C-2 Noteholders and Preferred Shareholders are to receive payments upon the Redemption Date, to the exclusion of the CCMF.  (SDCC at ¶ 60.)

Section 9.1(e), however, provides that both of those classes receive payments only after "***payment of the Notes and expenses of the Co-Issuers***." (Indenture at § 9.1(e) (emphasis added).)  This language is a reference to the priority of payments scheme of § 11.1 of the Indenture.  If not intended to incorporate the priority of payments set forth in § 11.1, then the Indenture provides no guidance whatsoever on ***how*** to distribute proceeds to noteholders or pay expenses in the event of an Optional Redemption.  Sub-section 9.1(e) therefore must incorporate the priority of payments.  In addition, this provision has a perfectly understandable function: to provide for a specific class of payment called the "Class C-2 Redemption Additional Interest," which arises ***only in the event of an Optional Redemption***, and consequently is not provided for in the § 11.1 priority of payments.  (*See id.* at § 1.1 "Class C-2 Redemption Additional Interest" Definition.)  Only when § 9.1(e) and the § 11.1 priority of payments are read to function together, is there a coherent distribution scheme that accounts for distributions of both "Class C-2 Redemption Additional Interest" and all other classes of distributees.  Thus, sub-section 9.1(e) provides no barrier to the payment of the CCMF to Franklin Advisers.

### III.

### FRANKLIN ADVISERS IS ENTITLED TO RECEIVE ITS CCMF

As demonstrated above, the unambiguous terms of the Indenture dispose of the disputes raised by the Shareholder Defendants.  Shorn of the interpretive issues raised by the Shareholder

13

Defendants, the calculation of the CCMF is a simple arithmetic exercise. This calculation is set forth in the Collateral Management Fee Certification, dated February 26, 2007. (Complaint at ¶ 33 and Exhibit I thereto.) Moreover, the Shareholder Defendants admit that if the principal payments made on the Redemption Date are included in the calculation of the CCMF, the 12% hurdle is, indeed, reached. (SDCC at ¶ 53.) Thus, if the Court accepts Franklin Advisers' reading of the Indenture, there is apparently no dispute as to the calculation of the CCMF to which Franklin Advisers is entitled.[10] Judgment in favor of Franklin Advisers is therefore appropriate.

## CONCLUSION

For the reasons set forth herein, Franklin Advisers' motion to dismiss the cross-claims asserted by Interpleader Defendants CDO Plus and Merrill Lynch should be granted with prejudice.

Dated: May 10, 2007
New York, New York

SCHINDLER COHEN & HOCHMAN LLP

By: ___s/ Jonathan L. Hochman___
Jonathan L. Hochman (JH 7072)
Matthew A. Katz (MK 4252)

100 Wall Street, 15th Floor
New York, New York  10005
(212) 277-6300

*Attorneys for Franklin Advisers, Inc.*

---

[10] In addition to the calculations set forth in the Collateral Management Fee Certification, a narrative description of the calculation of the CCMF is included in the FACC at ¶ 78.