UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
THE BANK OF NEW YORK TRUST COMPANY, :
N.A., AS TRUSTEE, :
                Interpleader Plaintiff, :
:
     -against- :
:
FRANKLIN ADVISERS, INC., FRANKLIN : Case No. 07-CV-1746 (VM)
CLO II, LTD., FRANKLIN CLO II, CORP., CDO :
PLUS MASTER FUND, LTD., CHASE MANHATTAN : *(Electronically Filed)*
BANK LONDON NOMINEE FOR SEIRA 13 as a :
nominee, DEUTSCHE BANK SECURITIES INC. as a :
nominee, GENSEC IRELAND LIMITED as a nominee, :
HARE & CO. as a nominee, MAC & CO. as a nominee, :
MASSACHUSETTS MUTUAL LIFE INSURANCE CO. :
as a nominee, MERRILL LYNCH, PIERCE, FENNER & :
SMITH INC. as a nominee, SUN LIFE ASSURANCE :
CO. OF CANADA as a nominee, TEMPLETON :
GLOBAL ADVISORS, LTD. as a nominee, AND :
:
"JOHN DOE #1" through "JOHN DOE #12," the :
last twelve names being fictitious and unknown to :
plaintiff, the persons or parties intended being the :
beneficial owners of the Preferred Shares, the :
Series I Combination Security, and the Class C-2 Notes :
under the Indenture as more fully described in the :
Complaint, :
                Interpleader Defendants. :
:
------------------------------------------------------------------ X

**FRANKLIN ADVISERS' REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE
<u>CROSS-CLAIMS OF CDO PLUS AND MERRILL LYNCH</u>**

SCHINDLER COHEN & HOCHMAN LLP
100 Wall Street, 15th Floor
New York, New York 10005

*Attorneys for Franklin Advisers, Inc.*

{00031879}

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................. i

PRELIMINARY STATEMENT ........................................................................................................... 1

ARGUMENT ..................................................................................................................................... 1

    I.       Franklin Advisers' Motion To Dismiss Is Proper ........................................................ 1

    II.      The Shareholder Defendants' Argument That $337,287.32 Represents A "Maximum CCMF" Is Merely A Restatement Of Their Accrual Argument ......................................................................................... 3

    III.     The Indenture Clearly Requires That The 12% Hurdle Calculation Includes Proceeds Received By The Preferred Shareholders On The Redemption Date ...................................................................... 4

    IV.     The CCMF Accrues Throughout The Life Of The Transaction ............................... 8

    V.      The Shareholder Defendants' Argument Concerning Timely Certification Of The CCMF To The Trustee Is Based On A Blatant Misreading Of The Indenture ........................................................................ 9

CONCLUSION ............................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Averhart v. Cook County Correction Dep't*,
No. 01 C 5569, 2002 WL 123539 (N.D. Ill. Jan. 29, 2002) ............................................................ 2

*Barnum v. Millbrook Care Ltd. P'ship*,
850 F. Supp. 1227 (S.D.N.Y. 1994) ................................................................................................ 3

*Emerald Mines Co. v. Federal Mine Safety and Health Review Comm'n*,
863 F.2d 51 (D.C. Cir. 1988) ........................................................................................................... 7

*In re Stock Exchanges Options Trading Antitrust Litig.*,
No. 99 Civ. 0962, 2005 WL 1635158 (S.D.N.Y. July 8, 2005) ...................................................... 8

*United Artists Theatre Circuit, Inc. v. Sun Plaza Enter. Corp.*,
No. 97-CV-4092, 1997 WL 833453 (E.D.N.Y. Dec. 18, 1997) ..................................................... 2

**Statutes**

Fed. R. Civ. P. 7(b) ......................................................................................................................... 2

Fed. R. Civ. P. 12(b) ....................................................................................................................... 3

**Other Authorities**

*Webster's II New Riverside Dictionary* 700 (1996) ....................................................................... 5

**PRELIMINARY STATEMENT**

The Shareholder Defendants' Opposition adds little to the position staked out in their cross-claims, which boils down to an attempt to redraft the Indenture to artificially inflate their profits at Franklin Advisers' expense.[1] But the plain terms of the Indenture require payment of the CCMF to Franklin Advisers. The Shareholder Defendants' arguments concerning the effect of the Indenture on payment of the CCMF are premised on erroneous readings and selective omissions. Franklin Advisers submits this reply memorandum to correct several misimpressions contained in the Opposition.[2]

The key issue remains whether the 12% IRR requirement for triggering the CCMF should be calculated including amounts the Preferred Shareholders receive upon Redemption. The Shareholder Defendants advert to language in the Indenture indicating that the CCMF must be paid "in arrears" and that the 12% hurdle is to be measured on amounts that the Preferred Shareholders "have received." However, as demonstrated below, this language does not affect nor contradict the crystal clear requirement that the 12% hurdle be measured "***through*** the Distribution Date." (Emphasis added.)

**ARGUMENT**

**I.   Franklin Advisers' Motion To Dismiss Is Proper**

The Shareholder Defendants assert that Franklin Advisers is procedurally barred from bringing a motion to dismiss. (*See* Opposition at 7-8.) The Federal Rules of Civil Procedure, of course, provide otherwise. Federal Rule of Civil Procedure 12(b) provides that a defense for

---

[1] All capitalized terms herein have the same meanings assigned to them in Franklin Advisers' Memorandum of Law in Support of its Motion to Dismiss the Cross-claims of CDO Plus and Merrill Lynch filed in the above-captioned action on May 10, 2007 (the "FA Opening Br."). The term "Opposition" refers to the Memorandum of Law in Opposition to the Motion of Franklin Advisers, Inc. to Dismiss the Cross-claims of CDO Plus and Merrill Lynch, dated June 13, 2007.

[2] The Opposition is rife with overwrought rhetoric and allegations of impropriety on Franklin Advisers' part. These irresponsible charges are patently baseless; accordingly, for the most part, we ignore them.

failure to state a claim upon which relief can be granted may be made "by motion" in lieu of an answer and may be made in response to, *inter alia,* any cross-claim.  Moreover, this Court's individual rules specifically provide that no pre-motion conference is required in the case of "motions to dismiss in lieu of an answer." (Hon. V. Marrero, Indiv. Practice II.A.)  Thus, the Defendant Shareholders' indignation at such basic procedure is entirely unwarranted.

In addition, making a routine motion to dismiss is by no means "misconduct" somehow designed to garner the last word improperly. (*See* Opposition at 7-8.)  If the Shareholder Defendants believed that they were entitled to judgment based on the pleadings, they could have moved to dismiss Franklin Advisers' cross-claims or cross-moved for judgment on the pleadings.  They did not do so.[3]

The Shareholder Defendants also fault Franklin Advisers for seeking "a money judgment based on a computation in its own Crossclaim, which computation was disputed by Claimants in their answer." (Opposition at 7.)  Franklin Advisers' approximately $7.2 million figure for the CCMF is based on a purely mathematical calculation and represents the CCMF that was certified to the Trustee on February 26, 2007. (*See* Interpleader Complaint at ¶¶ 33-37 and Exhibit I thereto.)  Apart from interpretational disputes concerning whether the 12% hurdle has been reached and how the CCMF accrues, there does not appear to be any dispute over the mathematical calculation of the CCMF.  However, if the Court were to deem this calculation

---

[3]   Because the Shareholder Defendants have neglected to make the motions available to them under the Rules, their request for judgment based on the pleadings (*see, e.g.,* Opposition at 8, 9, 22) should be rejected. *See* Fed. R. Civ. P. 7(b)(1) ("An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing . . . ."); *United Artists Theatre Circuit, Inc. v. Sun Plaza Enter. Corp.*, No. 97-CV-4092, 1997 WL 833453, at *1 (E.D.N.Y. Dec. 18, 1997) (rejecting opposition to motion where submitted in letter format); *Averhart v. Cook County Correction Dep't*, No. 01 C 5569, 2002 WL 123539, at *2 (N.D. Ill. Jan. 29, 2002) (denying request to amend complaint included in an opposition "because a response to defendants' motion to dismiss is not the proper place to make" such a request.).  In addition, their claim that Franklin Advisers made a "fatal error" in asserting that the Indenture is unambiguous (*see* Opposition at 8, 9) is simply bizarre and in no way supports a claim that the Shareholder Defendants are entitled to any judgment in their favor.  To obviate any doubt, Franklin Advisers' position is that the Indenture unambiguously favors Franklin Advisers' interpretation.  If the Court disagrees, Franklin Advisers then contends that, at most, the language is ambiguous – not that it unambiguously favors the Shareholder Defendants.

{00031879}                                                           2

outside of the pleadings, it would certainly be appropriate to treat the instant motion as one for summary judgment for the limited purpose of considering that calculation. *See* Fed. R. Civ. P. 12(b) ("If, on a motion asserting the defense numbered (6) . . . matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment . . . .").[4]

## II. The Shareholder Defendants' Argument That $337,287.32 Represents A "Maximum CCMF" Is Merely A Restatement Of Their Accrual Argument

The Shareholder Defendants argue that, according to their analysis of the "Base CCMF" (*See* FA Opening Br. at 6)[5] calculation, the maximum CCMF that could be payable to Franklin Advisers is no more than $337,287.32. This is merely a restatement of their argument that the CCMF does not accrue unless it is "payable." (*See* Opposition at 18-19.)

The Shareholder Defendants appear to believe that establishing November 17, 2006 as the first day of the Due Period preceding the Redemption Date limits the maximum CCMF to an amount no more than $337,287.32. (*See* Opposition at 11-13.) One does not follow from the other. Franklin Advisers agrees that November 17, 2006 is the first day of the relevant Due Period. The difference between the approximately $7.2 million Base CCMF calculated by

---

[4] The Shareholder Defendants also accuse Franklin Advisers of citing to "a variety of sources other than the Crossclaims and the Indenture." (Opposition at 7.) Franklin Advisers' papers demonstrate that this is simply untrue. Franklin Advisers cites to precisely six documents in its memorandum of law: (i) the Shareholder Defendants' cross-claims, (ii) the Indenture (attached to the interpleader complaint as Exhibit A); (iii) the Collateral Management Agreement (attached to the interpleader complaint as Exhibit B); (iv) the interpleader complaint; (v) the Collateral Management Fee Certification (attached to the interpleader complaint as Exhibit I) and (vi) Franklin Advisers' answer and cross-claims. Aside from the mathematical calculation contained in the Collateral Management Fee Certification, all of the facts upon which Franklin Advisers' motion is predicated are contained in the Shareholder Defendants' cross-claims and the documents incorporated into it. Citation to those facts and documents is therefore plainly proper. *See, e.g.*, *Barnum v. Millbrook Care Ltd. P'ship*, 850 F. Supp. 1227, 1232-33 (S.D.N.Y. 1994) (the court may consider written instruments and documents made a part of a pleading on a motion to dismiss).

[5] The Shareholder Defendants alternately term this the "CCMF Definition Part One" and the "Maximum Potential CCMF." (*See* Opposition at 11, 13.) Whatever the terminology, both parties are referring to the CCMF payable to Franklin Advisers without consideration of either of the limiting conditions found in the subsequent parts of the CCMF definition.

Franklin Advisers and the $327,287.32 Base CCMF calculated by the Shareholder Defendants is apparently due to the Shareholder Defendants' (mis)calculation of the Base CCMF for *only* the final Interest Accrual Period prior to the Redemption Date **without adding that to the accrued Base CCMFs for each previous Interest Accrual period**. Thus, this is neither a separate argument nor an issue of fact, but rather a mere recasting of the Shareholder Defendants' argument that the CCMF does not accrue throughout the life of CLO II. (*See* Opposition at 18-19.) As discussed in Franklin Advisers' Opening brief at pp. 11-12 and *infra* pp. 8-9, the Shareholder Defendants' argument against accrual is not supported by the Indenture and should be rejected.[6]

### III. The Indenture Clearly Requires That The 12% Hurdle Calculation Includes Proceeds Received By The Preferred Shareholders On The Redemption Date

The crux of the Shareholder Defendants' cross-claims and their Opposition is the assertion that the payments made to the Preferred Shareholders on Redemption should not be considered when determining if the CCMF is to be paid. (*See* SDCC ¶¶ 52-63; Opposition at 13-18.) The Preferred Shareholders argue that because these payments are to be ignored, the 12% IRR hurdle (or, in the Shareholder Defendants' terminology, the "CCMF Definition Part Two") is not reached and there can be no payment of the CCMF. (*See id.*) However, the Indenture plainly states that the Redemption Date payments to the Preferred Shareholder *are* included when determining payment of the CCMF.

The Shareholder Defendants are simply unable to account for the CCMF Definition's requirement that payments received ***"through such Distribution Date"*** are to be considered

---

[6] Although a factual matter completely irrelevant to his motion, the Shareholder Defendants also mistake the total fees already paid to Franklin Advisers for their work as the Collateral Manager. In connection with CLO II, Franklin Advisers managed nearly $540 million in assets over the course of six years, yielding an internal rate of return for CLO II investors of 17% – net of fees, even if the disputed CCMF is paid. The fees already paid to Franklin Advisers have actually been approximately $14 million – not $21 million as claimed by the Shareholder Defendants.

when calculating whether the 12% hurdle has been reached.  (Indenture at § 1.1 CCMF Definition (emphasis added).)  Their conclusory assertion that "through" does not mean "including" (Opposition at 15) is unavailing; it defies both the definition of the term and the common sense interpretation of the Indenture.  In fact, the phrase "through such Distribution Date" must mean that payments made on each particular Distribution Date (or, here, on the Redemption Date) are included when determining if the 12% IRR hurdle has been met.  There is no other rational definition.  *See Webster's II New Riverside Dictionary* 700 (1996) (Definition of "Through" is, *inter alia*, "[f]or the duration of" or "[a]t or to the end of").  "Through such Distribution Date" thus means "to the end of the Redemption Date."  Payments made on the Redemption Date are therefore included in the 12% hurdle evaluation.

Because, the Shareholder Defendants can offer no plausible alternative explanation for this language, they instead make several erroneous arguments that the Indenture does not require payments made on the Redemption Date to be included in the 12% hurdle calculation.  *First*, they claim that "look[ing] forward to the last dollar to be paid on the Redemption Date" to calculate the CCMF is "a concept found nowhere in the Indenture."  (Opposition at 14.)  This is manifestly wrong.  In fact, the CCMF definition in the Indenture uses the phrase "through such Distribution Date" on two separate occasions: (i) as described above with respect to the 12% IRR hurdle and then again (ii) in the CCMF Limiting Formula ("CCMF Definition Part Three" as termed by the Shareholder Defendants), which limits the CCMF paid based on a calculation that includes "the amount necessary to provide an internal rate of return . . . to Holders of Preferred Shares of 12% per annum for the period from the Closing Date ***through such Distribution Date*** . . . ." (Indenture at § 1.1 CCMF Definition (emphasis added); *see also* FA Opening Br. at 10-11.)

In both cases, the Indenture specifically requires a calculation of amounts received on the current Distribution Date.

*Second*, the Shareholder Defendants contend that the term "in arrears" at the beginning of the CCMF definition somehow negates the "through such Distribution Date" language. (*See* Opposition at 3, 15.) There is no dispute about the meaning of the term "in arrears" (*see* Opposition at 15); however, that term simply has nothing to do with the date through which the 12% hurdle is calculated. Instead, "in arrears" merely refers to the preceding Interest Accrual Period used for determination of the Base CCMF for that Period. (Indenture at §1.1 CCMF Definition.) The beginning of the CCMF definition reads as follows:

> "<u>Contingent Collateral Management Fee</u>": The fee payable for each Interest Accrual Period to the Collateral Manager in arrears on each Distribution Date . . . equal to 0.25% per annum. . . ." (*Id.*)

Thus, on each Distribution Date, the Base CCMF derives from the preceding completed Interest Accrual Period (and, as demonstrated below, any accrued Base CCMFs derive from prior Accrual Periods). In contrast, the provision concerning calculation of the 12% hurdle provides the CCMF

> "will be payable on each Distribution Date only to the extent that . . . the holders of the Preferred Shares have received an internal rate of return of 12% per annum . . . on the amount of the initial purchase price of the Preferred Shares for the period from the Closing Date through such Distribution Date." (*Id.*)

These two components of the CCMF definition thus ***each have their own expressly defined time frame*** and, therefore, the phrase "in arrears" in no way conflicts with the phrase "through such Distribution Date."

*Third*, the Shareholder Defendants point to the phrase "have received" as another of the "explicit backward-looking statements" supposedly refuting the concept that the 12% hurdle looks to payments the Preferred Shareholders receive on the Redemption Date. (*See* Opposition

at 15.)  However, "have received" is the present perfect tense of the verb "receive."  Thus, "have received" is used to refer to the ongoing act of receiving items both in the past and in the present. *See, e.g., Emerald Mines Co. v. Federal Mine Safety and Health Review Comm'n*, 863 F.2d 51, 56 (D.C. Cir. 1988) ("Use of the present perfect tense" of a verb "denotes a wide, not narrow temporal range covering both past and present" acts).  This use of the expansive present perfect tense is therefore perfectly consistent with the phrase "through such Distribution Date."

*Fourth*, the Shareholder Defendants continue to insist that including the payments made to the Preferred Shareholders on the Redemption Date when calculating if the 12% hurdle has been met somehow entails funds traveling "back up the waterfall."  (*See* Opposition at 16-17.)  But Franklin Advisers is not suggesting that the funds flow "upward" (*Id.*) or that the § 11.1 waterfall scheme need disavow the laws of physics.  Rather, the Indenture, *as written*, and taking into account both the CCMF definition and § 11.1, provides that the Trustee pays the CCMF earlier in the waterfall, but only if the funds that are paid at the next steps in the waterfall are sufficient to yield a 12% IRR.  Thus, § 11.1(a)(ii)(J) – the CCMF – is of greater priority in the payment scheme than § 11.1(a)(ii)(L) – the payment of Principal to Preferred Shareholders.  But the §11.1(a)(ii)(J) disbursements (*i.e.* the CCMF) can only be paid if the payment lower in priority meets the 12% threshold.  (Indenture at §§ 11.1(a)(ii)(J) and 11.1(a)(ii)(L).)  The evaluation, therefore, involves no metaphorical upstream flow of funds; instead the money flows one way, but the Trustee must simply calculate the amount of the lower priority payments to the Preferred Shareholders as it determines if the higher priority CCMF should be paid.  There is no reason that this calculation cannot be made and the Shareholder Defendants have to answer to the obvious point that this simultaneous calculation is easily feasible.

*Finally*, the Shareholder Defendants' assertion that § 9.1(e) "provides the last nail in the

coffin" is entirely unavailing. Not only do the Shareholder Defendants neglect to explain in any manner how this section furthers their theory, they also offer no explanation for the introductory phrase "[a]fter payment of the Notes *and the expenses of the Co-Issuers* . . .", which, when read in the context of the rest of the Indenture, is a reference to the § 11.1 priority of payments scheme that includes payment of the CCMF. (*See* FA Opening Br. at 13.)

### IV.  The CCMF Accrues Throughout The Life Of The Transaction

The Indenture plainly provides for accrual of the CCMF for the duration of CLO II. (*See* Indenture at § 1.1 CCMF Definition (the CCMF payable on each Distribution Date will be equal to . . . "the accrued and unpaid" CCMF); *id.* at §11.1(a)(i)(O) (Interest Proceeds applied to "accrued and unpaid" CCMFs); *see also* FA Opening Br. at 12.) The Shareholder Defendants' assertions to the contrary are not grounded on any substantive analysis of the provisions within the Indenture. For example, the Shareholder Defendants claim that "there is no provision in the Indenture for accrual unless, as of a prior Distribution Date, a CCMF was earned and was payable, but there were insufficient funds available to pay it pursuant to the Priority of Payments waterfall." (Opposition at 19.) But, the Shareholder Defendants are *inserting* the term "earned and payable" (and do so throughout their Opposition) to create a prerequisite for accrual of the CCMF that does not exist in the Indenture – a tactic not permitted by the principles of contract interpretation. *See In re Stock Exchanges Options Trading Antitrust Litig.*, No. 99 Civ. 0962, 2005 WL 1635158, at *7 (S.D.N.Y. July 8, 2005); FA Opening Br. at 12.

The Indenture clearly indicates that the CCMF (unlike the Subordinated Collateral Management Fee(s)) accrues without having been payable. The priority of payment provision for the Subordinated Collateral Management Fee requires payment of "all accrued and unpaid Subordinated Collateral Management Fees *that were due and payable* to the Collateral Manager

*on prior Distribution Dates*. . . ."  (Indenture at § 11.1(a)(i)(N)(2) (Emphasis added).)  **However, there is no such requirement for payment of accrued amounts of the CCMF**.  (Indenture at §§ 11.1(a)(i)(0), (ii)(J); s*ee also* FA Opening Br. at 12.)  Thus, the CCMF accrues whether or not it was "due and payable" on prior Distribution Dates. (*See* FA Opening Br. at 12.)

V.  **The Shareholder Defendants' Argument Concerning Timely Certification Of The CCMF To The Trustee Is Based On a Blatant Misreading of the Indenture**

The Indenture also belies the Shareholder Defendants' assertion that Franklin Advisers failed to submit timely a certificate to the CLO II Trustee prior to the Redemption.  According to the Shareholder Defendants, Franklin Advisers was required to certify to the Trustee its entitlement to the accrued CCMF on February 20, 2007.  (*See* Opposition at 21.)  The date for certification of the CCMF amount is one day after the end of the relevant Due Period.  (*See* Indenture § 11.1(e) (" . . . no more than one Business Days [sic] after the Due Period ending prior to such Distribution Date, the Collateral Manager shall deliver to the Trustee a calculation of the amount payable on such Distribution Date.").)  The Due Period is defined as:

> "Due Period" With respect to any Distribution Date, the period commencing immediately following the seventh Business Day prior to the preceding Distribution Date (or on the Closing Date, in the case of the Due Period relating to the first Distribution Date) and ending on the seventh Business Day prior to such Distribution Date (or, in the case of a Due Period that is applicable to the Distribution Date that is the Stated Maturity of any Note, or the Maturity of all Outstanding Notes, ending on the day preceding such Distribution Date).  (Indenture § 1.1 "Due Period" Definition.)

Based on this definition, the Shareholder Defendants assert that the certification was due on February 20, 2007.  (Opposition at 21.)  The Shareholder Defendants, however, have failed to read all the way to end of the definition of Due Period.  The Indenture specifically provides that, "in the case of a Due Period that is applicable to the Distribution Date that is . . . ***the Maturity of***

{00031879}                                                           9

*all Outstanding Notes*, *[the Due Period ends] on the day preceding such Distribution Date*).″ (emphasis added)).  As the Shareholder Defendants concede, the Redemption Date is a Distribution Date and, according to the Indenture it is the Distribution Date at which all Outstanding Notes reach Maturity.  (*See* Opposition at 12, n.4; Indenture § 1.1 "Maturity" Definition ("With respect to any Note or the Series I Combination Securities, the date on which all outstanding unpaid principal . . . becomes due and payable as therein or herein provided, ***whether at the Stated Maturity or by declaration of acceleration, call for redemption or otherwise.***" (emphasis added).)  Thus, the § 11.1(e) CCMF certification was due one day after the end of the last Due Period – which ended on February 27, 2007 – and Franklin Advisers' CCMF certification for the Redemption Date was properly submitted to the Trustee on February 28.[7]

## CONCLUSION

For the reasons set forth herein, Franklin Advisers respectfully reasserts that its motion to dismiss the cross-claims asserted by Interpleader Defendants CDO Plus and Merrill Lynch should be granted with prejudice.  To the extent that CDO Plus and Merrill Lynch have moved to dismiss Franklin Advisers' cross-claims, Franklin Advisers respectfully requests that the Court deny such demand.

---

[7]  The Shareholder Defendants' contention that Franklin Advisers should have submitted certifications for prior Distribution Dates – or that not doing so is significant – (*See* Opposition at 21) contradicts the Indenture. Certifications need only be made for CCMF "amounts payable on such Distribution Dates." (Indenture § 11.1(e).) Prior to the Redemption Date, the CCMF had never hit the 12% hurdle and therefore was never previously "payable." Thus, no certification was previously required.

Dated: June 29, 2007
New York, New York

SCHINDLER COHEN & HOCHMAN LLP

By:  /s/ Jonathan L. Hochman
Jonathan L. Hochman (JH 7072)
Matthew A. Katz (MK 4252)

100 Wall Street, 15th Floor
New York, New York  10005
(212) 277-6300

*Attorneys for Franklin Advisers, Inc.*

{00031879}                         11