USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11-20-07

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------ X
THE BANK OF NEW YORK TRUST,    :
N.A., AS TRUSTEE               :
                               :
              Plaintiff,       :    07 Civ. 1746
                               :
        - against -            :    DECISION AND ORDER
                               :
FRANKLIN ADVISORS, INC.,       :
                               :
              Defendants.      :
------------------------------ X
```

**VICTOR MARRERO, United States District Judge.**

CDO Plus Master Fund, Ltd ("CDO Plus") and Merrill Lynch, Pierce, Fenner & Smith ("Merrill Lynch") (collectively, the "Claimants"), defendants in this statutory interpleader action brought by The Bank of New York Trust Company, N.A. (the "Trustee"), filed a cross-claim against Franklin Advisors, Inc. ("Franklin Advisors"), another defendant in this interpleader action. Franklin Advisors moves to dismiss the cross-claim pursuant to Federal Rules of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). For the reasons stated below, Franklin Advisors' motion to dismiss is DENIED.

### I. BACKGROUND

The following facts are taken primarily from the Claimants' Answer and Cross-claims dated April 20, 2007 (the "Cross-claim") and the Interpleader Complaint dated February 28, 2007 (the "Interpleader Complaint"), the pleadings of which the Court accepts as true for the purpose of ruling on the motion to dismiss. See Chambers v. Time Warner, Inc., 282

F.3d 147, 152 (2d Cir. 2002) (citing Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001)).

The Trustee, Franklin CLO II, Ltd. (the "Issuer"), and Franklin CLO II, Corp. (the "Co-Issuer"), entered into an indenture dated July 26, 2001. (See Indenture dated July 26, 2001 (the "Indenture"), attached as Ex. A to Interpleader Compl.) According to the Indenture, the Issuer and Co-Issuer issued certain classes of notes and securities, including Series I Combination Notes, Class C-2 Notes and Preferred Shares for a collateralized loan transaction (the "CLO II Transaction"). The Claimants are substantial holders of the Preferred Shares and Class-2 Notes in the CLO II Transaction. (Cross-claim at ¶ 51)

On July 26, 2001, the Issuer and Franklin Advisors entered into a collateral management agreement (the "Collateral Management Agreement"), under which Franklin Advisors was appointed as the manager of the collateral provided as security for the debt obligations issued under the Indenture. Pursuant to this agreement and the Indenture, Franklin Advisors performs various collateral management services on behalf of the Issuer, including supervising and directing the investment and reinvestment of the collateral. In exchange, Franklin Advisors receives a Base Collateral Management Fee and Subordinated Collateral Management Fee,

and it may be eligible for a Contingent Collateral Management Fee (the "CCMF") based upon the returns on investment realized by the holders of the Preferred Shares (the "Preferred Shareholders").

In January 2007, a majority of the Preferred Shareholders directed the Issuer and Co-Issuer to exercise an optional redemption pursuant to Section 9.1(a) of the Indenture. (See Directions of Preferred Shareholders, attached as Ex. C to Interpleader Compl.) Consistent with those directions, the Issuer and Co-Issuer sent the Trustee a duly executed Issuer Certificate-Notice of Redemption. (See Issuer Certificate-Notice of Redemption, attached as Ex. D to Interpleader Compl.) On February 14, 2007 the Trustee sent a Notice of Redemption to the Preferred Shareholders and the holders of certain classes of notes and Series 1 Combination Notes advising them that an optional redemption would occur on February 28, 2007. (See Notice of Redemption, attached as Ex. E to Interpleader Compl.)

When CDO Plus learned that Franklin Advisors intended to seek payment of the CCMF, it notified the Trustee and Franklin Advisors by letters dated February 6 and February 9, 2007 that Franklin Advisors was "not entitled to any payment in respect of a [CCMF]," pursuant to Article 9 of the Indenture. (Letters dated Feb. 6, 2007 and Feb. 9, 2007, attached as Exs.

-3-

F and G to Interpleader Compl.)  Franklin Advisors responded by letter dated February 14, 2007 stating that, in accordance with the terms of the Indenture, it is entitled to the CCMF. (See Letter dated Feb. 14, 2007, attached as Ex. H to Interpleader Compl.)  Subsequently, the Trustee received a CCMF Certification from Franklin Advisors indicating that as of February 28, 2007, Franklin Advisors was owed $7,220,205.00 as payment for its CCMF.  (See Certification Letter dated Feb. 14, 2007, attached as Ex. I to Interpleader Compl.)

The Claimants assert that, pursuant to the clear terms of the Indenture, Franklin Advisors did not satisfy the conditions precedent to payment of the CCMF, and, therefore, that the Preferred Shareholders are entitled to the funds at issue.  Franklin Advisors argues that the Indentures' clear terms require distribution of the CCMF to Franklin Advisors. In response to the dispute regarding the allocation of the CCMF, the Trustee filed the instant interpleader action pursuant to 28 U.S.C. § 1335(a), alleging it is a neutral stakeholder, and deposited $28,249,181.73 with the Registry of the Court.  By Order dated October 9, 2007, the Court discharged the Trustee.  Presently before the Court is Franklin Advisors' motion to dismiss.

-4-

## II. **DISCUSSION**

A. LEGAL STANDARD

    1. Standard of Review

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court construes the complaint broadly, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). However, mere "conclusions of law or unwarranted deductions of fact" need not be accepted as true. First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994) (quotation marks and citation omitted). A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).

    2. Principles Governing Contract Interpretation

"It is well settled that '[t]he threshold question in a dispute over the meaning of a contract is whether the contract terms are ambiguous.'" Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000) (quoting Revson v. Cinque & Cinque, P.C., 221 F.3d 59, 66 (2d Cir. 2000)). "Contract language is not ambiguous if it has 'a definite and precise meaning, unattended by danger of misconception in the purport

-5-

of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.'" <u>Hunt Ltd. v. Lifschultz Fast Freight, Inc.</u>, 889 F.2d 1274, 1277 (2d Cir. 1989) (<u>quoting</u> <u>Breed v. Ins. Co. of N. Am.</u>, 385 N.E.2d 1280, 1282 (N.Y. 1978)). Contract language is ambiguous when it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." <u>Seiden Assoc. v. ANC Holdings, Inc.</u>, 959 F.2d 425, 428 (2d Cir. 1992) (citations and internal quotation marks omitted). "Whether a contract's terms are ambiguous is a question of law decided by the court." <u>Consarc Corp. v. Marine Midland Bank, N.A.</u>, 996 F.2d 568, 573 (2d Cir. 1993) (citations omitted).

Where a written agreement clearly and unambiguously sets forth the parties' intent, a court called upon to interpret the contract must give effect to the intent as indicated by the language used, <u>see</u> <u>Crane Co. v. Coltec Indus., Inc.</u>, 171 F.3d 733, 737 (2d Cir. 1999), and the Court "must enforce that plain meaning, rather than rewrite an unambiguous agreement." <u>Krumme</u>, 238 F.3d at 138 (citations and internal quotation marks omitted); <u>see also</u> <u>Aon Financial Prods., Inc. v. Societe Generale</u>, 476 F.3d 90, 96 (2d Cir. 2007) (If a contract's

language is unambiguous, the court is "'required to give effect to the contract as written.'") (quoting K. Bell & Assocs., Inc. v. Lloyd's Underwriters, 97 F.3d 632, 637 (2d Cir. 1996))

B.  APPLICATION

This Court cannot conclude that the language in the Indenture is unambiguous. The Indenture, in pertinent part, states that the CCMF

> will be payable on each Distribution Date[1] only to the extent that (I) the [Preferred Shareholders] have received an internal rate of return of 12% per annum (based upon quarterly payment periods and calculated using an assumed purchase price of $1.00 per Preferred Share) on the amount of the initial purchase price of the Preferred Shares for the period from the Closing Date through such Distribution Date and (ii) funds are available for such purpose in accordance with the Priority of Payments described under Section 11.1. hereof;

(Indenture at 16.)

The parties agree that CCMF will be payable to Franklin Advisors if the Preferred Shareholders have received an internal rate of return of 12 percent ("12% IRR"). The Claimants assert that the Indenture clearly requires that Franklin Advisors satisfy the following three conditions in

---

[1] The "Distribution Date" is "November 28, February 28, May 28 and August 28 of each year (or, for all purposes other than the definition of the 'Interest Accrual Period', if such day is not a Business Day, then the next succeeding Business Day) commencing in November 2001." (Indenture dated July 26, 2001, attached as Ex. A to Interpleader Compl. 21)

order to be eligible for any CCMF: (1) Franklin Advisors would have to earn the CCMF by reason of the Preferred Shareholders receiving a 12% IRR by the prior Distribution Date; (2) the CCMF would have to be payable pursuant to the Priority of Payments under Section 11.1 of the Indenture ("§ 11.1"); and (3) Franklin Advisors would have to certify its entitlement to the CCMF pursuant to § 11.1(e). (See Mem. of Law in Opp'n to the Mot. of Franklin Advisors to Dismiss the Cross-Cls. of CDO Plus and Merrill Lynch dated June 13, 2007 ("Claimants' Opp'n Mem.") 6, 16-17.) The Claimants contend that Franklin Advisors has not satisfied any of those conditions.

Franklin Advisors argues that the crux of the Claimants' cross-claim is the assertion that the 12% IRR that triggers the CCMF should not include amounts the Preferred Shareholders will receive on the Redemption Date[2]. (See Franklin Advisors' Reply Mem. Of Law in Further Supp. of its Mot. to Dismiss the Cross-Cls. of CDO Plus and Merrill Lynch dated June 19, 2007 ("Franklin Advisors' Reply Mem.") 1, 4.)  Franklin Advisors contends that such an interpretation is at odds with the Indenture's clear terms because the phrase "through such Distribution Date" requires an accounting of all amounts that will be received on the Redemption Date when calculating

---

[2] The "Redemption Date" is "[a]ny date specified for a redemption of Notes pursuant to Section 9.1" of the Indenture. (Id. at 48.)  Here, the Redemption Date is February 28, 2007, which is also the final Distribution Date. (See Claimants' Opp'n Mem. 3-4, 17)

-8-

whether the 12% IRR has been satisfied. Under Franklin Advisors' calculations, the Preferred Shareholders will have received a cumulative internal rate of return exceeding 12% when the last distribution of the liquidation proceeds is made to the holders and, therefore, Franklin Advisors argues it has satisfied the 12% IRR.

However, contrary to Franklin Advisors' contention, the Indenture's text does not clearly establish that the amounts the Preferred Shareholders receive on the Redemption Date should be included in calculating if the 12% IRR is met. The provision could be understood to require that the Preferred Shareholders receive a 12% IRR by the end of each Distribution Date rather than at the Redemption Date, i.e., the final Distribution Date.

Furthermore, the Court must look at the entire contract to give meaning to its provisions. See McGraw-Hill Companies, Inc. v. Vanguard Index Trust, 139 F. Supp. 2d 544, 552 (S.D.N.Y. 2001) ("[I]t is a cardinal rule of contract interpretation that a court must construe the terms of an agreement as a whole and in a manner that gives effect to the mutual intent of the parties.") (citations and quotation marks omitted). The Indenture defines the CCMF as requiring that funds must be available for CCMF in accordance with the Priority of Payments described under § 11.1. In relevant

part, § 11.1(ii) provides that:

> On each Distribution Date, Principal Proceeds shall be applied as follows: ...(j) to the payment of all due and unpaid Contingent Collateral Management Fees, but only to the extent not paid in full pursuant to subclause (O) and of clause (i) above; (k) to the payment of Class C-2 Second Additional Interest; and (L) any remaining Principal Proceeds to the Preferred Share Paying Agent for payment to the [Preferred Shareholders] pursuant to the Preferred Share Documents, to the extent legally permitted.

(Indenture at 164-66.)

The parties agree that this provision is sometimes referred to as a "waterfall" because funds cascade downward through each step, if payable at that step, and any residual funds pool at the bottom. The Claimants argue that, since § 11.1(a)(ii)(j) does not permit a forward-looking calculation of a CCMF, when § 11.1 is read in conjunction with the definition of CCMF, the CCMF must be calculated based upon what the Preferred Shareholders have received on the prior Distribution Date, not what they will receive on the Redemption Date. The Court finds that the Claimants construction offers a plausible and reasonable interpretation of the language at issue.

Similarly, Franklin Advisors construction is not unreasonable. Franklin Advisors asserts that when the definition of CCMF is read together with §§ 11.1(a)(ii)(J) and (L) the Trustee is to pay the CCMF earlier in the waterfall

than the Preferred Shareholders if the funds that are paid at the next steps in the waterfall are sufficient to yield a 12% IRR. Franklin Advisors contends that the Trustee must calculate the amount of the lower priority payments to the Preferred Shareholders to determine whether the CCMF should be paid.

The Court's role on a 12(b)(6) motion to dismiss is not to resolve contract ambiguities. "Where reasonable minds could be said to differ because the language the parties used in their written contract is susceptible to more than one meaning-each as reasonable as the other-and where extrinsic evidence of the parties' actual intent exists, it should be submitted to the trier of fact." Consarc, 996 F.2d at 573-74 (2d Cir. 1993). Here, the contract language at issue is ambiguous. Consarc, 996 F.2d at 573 ("An ambiguous term is one about which reasonable minds could differ".) (citing Seiden, 959 F.2d at 428; Care Travel Co. v. Pan Am. World Airways, Inc., 944 F.2d 983, 988 (2d Cir. 1991); Van Wagner Adver., 492 N.E.2d 756, 758-59 (N.Y. 1986)). Because the Court does not decide whether the calculation of the 12% IRR includes an accounting of all amounts that will be received on the Redemption Date, it does not address the other conditions that Claimants allege Franklin Advisors has not satisfied. Accordingly, Franklin Advisors' motion to dismiss must be

denied.

## III. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion to dismiss (Docket no. 48) of defendant Franklin Advisors, Inc. is DENIED.

**SO ORDERED.**

Dated:   New York, New York
         15 November 2007

_____
VICTOR MARRERO
U.S.D.J.